[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 808 
Auto-Owners Insurance Company ("Auto-Owners"), an automobile insurance carrier, appeals from a declaratory judgment in favor of Cortland D. DeLude d/b/a Tri-County Auto Sales. We affirm.
The transcript of the bench trial reveals the following pertinent, albeit somewhat convoluted, facts. Cortland DeLude purchased a Lincoln Town Car automobile from James L. Allensworth d/b/a Town Creek Auto Sales on April 21, 1997. DeLude paid Allensworth $13,500[1] for the vehicle, but allowed Allensworth to retain possession of the vehicle so that necessary repairs could be made. Allensworth and DeLude intended to resell the vehicle once the repairs were completed and to divide the profits derived from the resale. Allensworth convinced DeLude to allow Allensworth to be listed as the owner on the title certificate and to list DeLude as the lienholder because DeLude's check would not clear the bank until the following day, and Allensworth needed to obtain title to the vehicle from the previous owner immediately. DeLude reluctantly agreed, reasoning that Allensworth would be unable to transfer title to the vehicle without DeLude's first giving his consent to the transfer.
Auto-Owners had issued a dealer's blanket liability policy[2] of insurance to DeLude, who was operating a business known as Tri-County Auto Sales. The effective dates[3] of the policy period are disputed by the parties; however, that factual dispute does not affect the outcome of this appeal. DeLude claims that in late May, because he anticipated that the repairs to the Lincoln Town Car were near completion, he telephoned Sue Goggans at Goggans Insurance Agency[4] to apply for dealer's blanket insurance coverage on the vehicle. DeLude testified at trial that when he received his June invoice from Auto-Owners and saw that the premium for the coverage was not reflected on the bill, he again telephoned Goggans Insurance Agency on July 7, 1997, and spoke with Sue Goggans. During that telephone conversation, *Page 809 
DeLude specifically described to Goggans the Lincoln Town Car he had purchased. He explained that the vehicle was more expensive than the typical vehicle he had in his inventory and that, for that reason, he wanted to be sure that his dealer's blanket coverage was in force. Sue Goggans agreed to arrange for the coverage and also asked that DeLude come to the company office as soon as possible.[5]
Several days later, DeLude arrived at the company office to speak with Sue Goggans. DeLude brought with him the certificate of title to the vehicle that reflected DeLude as the lienholder on the car. When they met, Sue Goggans confessed to DeLude that she and her husband Terry, being unaware of DeLude's ownership interest in the vehicle, had purchased the Lincoln Town Car for their personal use from Allensworth on May 27, 1997, for $15,500. She took DeLude to the parking lot and showed him the vehicle. DeLude wanted to assume possession of the vehicle immediately, but Sue Goggans convinced him that she and her husband would like to "work something out" to settle the matter amicably.
Thereafter, DeLude confronted Allensworth, accusing him of selling the Lincoln Town Car without informing DeLude and without protecting DeLude's investment interest in the vehicle. In response, Allensworth assured DeLude that his interest in the vehicle had been fully protected. Allensworth told DeLude that the vehicle had been sold to the Gogganses for the amount of $18,500 pursuant to Allensworth and DeLude's plan.[6]
In July 1997, Allensworth wrote DeLude a check for $16,000, purporting to represent the total amount of DeLude's investment in the vehicle plus one-half of the profits realized from the sale of the vehicle to the Gogganses. DeLude presented the check to the bank several times, but the check was dishonored and returned bearing the stamp "insufficient funds."
Terry and Sue Goggans and DeLude attempted to reach some agreement whereby the car would be sold and the proceeds divided. Terry Goggans testified that he had invested an additional $5,500 in various repairs and improvements to the vehicle after he had purchased it from Allensworth. He was unwilling to agree to any arrangement that involved his settling for less than his total investment of $21,000; that inflexible position left little room for DeLude to recover a reasonable amount of his investment.[7]
On July 28, 1997, the Gogganses filed a declaratory-judgment action for declaratory judgment against James Allensworth d/b/a Town Creek Auto Sales and Cortland DeLude d/b/a Tri-County Auto Sales, seeking a certificate of title to the vehicle, free and clear of all liens and encumbrances, pursuant to § 7-2-403(2), Ala. Code 1975. On September 5, 1997, DeLude filed an answer in the Gogganses' action and asserted a counterclaim against the Gogganses, claiming that they had purchased the car as dealers; DeLude sought an adjudication that he was the rightful owner of the vehicle. In his answer DeLude also asserted a cross-claim against Allensworth, alleging fraudulent misrepresentation, *Page 810 
breach of contract, and conversion, and seeking both compensatory and punitive damages.
Thereafter, DeLude filed a claim with Auto-Owners, seeking to recover under the "False Pretense Endorsement" of his blanket liability policy. In connection with the claim he filed under his blanket liability policy, DeLude gave a recorded statement to an Auto-Owners agent. The agent advised DeLude that the policy required DeLude to use his best efforts to recover the vehicle before he could recover under the policy. DeLude subsequently hired Cobra Repossession Company (also known as Cobra Automobile Recovery, hereinafter "Cobra"); in October or November 1997, Cobra repossessed the car from the Gogganses' garage in the middle of the night. DeLude admitted at trial on cross-examination that after having repossessed the car, he misrepresented to the State Department of Revenue that he was the holder of a security interest in the vehicle, as opposed to being the owner of the vehicle. He explained that he had done so in order to conform to the information reflected on the face of the title certificate.
DeLude testified that he had paid Cobra a $500 reward fee and a $300 repossession fee. DeLude stated that the vehicle had severe hail damage on both front fenders, the hood, and the valance, that the air suspension of the vehicle was damaged, and that those damaged components had reduced the resale value of the vehicle. After DeLude repossessed the car, he sold it to a third party for $13,500. Thereafter, Auto-Owners filed a declaratory-judgment action against DeLude, requesting the court to declare whether it was liable to DeLude for the loss of the Lincoln Town Car under the false-pretense endorsement of the dealer's blanket policy.
On December 1, 1997, the Gogganses amended their complaint to include trespass and conversion claims against DeLude. On December 1, 1999, the Gogganses amended their complaint to add Cobra as an additional defendant as to their claims for trespass and conversion of the vehicle. On December 29, 1999, DeLude moved to consolidate the Gogganses' action with the declaratory-judgment action filed by Auto-Owners. Thereafter, on January 13, 2000, DeLude moved to add Goggans Insurance Agency as a party. On February 25, 2000, the trial court granted DeLude's motion to consolidate the action filed by the Gogganses with the action filed by Auto-Owners, reasoning that several factual issues were common to both cases and that consolidation of the cases pursuant to Rule 42(a), Ala.R.Civ.P., was appropriate. The trial court denied DeLude's motion to join Goggans Insurance Agency as a party, because DeLude's counterclaim did not assert a claim against the agency, but only against Terry and Sue Goggans, individually.
After a bench trial conducted on April 26, 2000, the trial court entered a judgment determining that the Gogganses were entitled to clear title to the vehicle; the trial court awarded the Gogganses damages in the amount of $18,500 on their conversion claim against DeLude. The trial court further awarded DeLude $18,500 in damages on his claim against Allensworth. In addition, the trial court found that on April 22, 1997, upon paying Allensworth for the vehicle, DeLude had become the lawful owner of and had come into constructive possession of, the vehicle. The trial court further found that DeLude was fraudulently induced to part with the vehicle by Allensworth's false representations that upon resale he would pay DeLude his investment in the vehicle plus one-half of any profits earned. The trial court concluded that Auto-Owners owed *Page 811 
coverage to DeLude for the loss of the vehicle under the false-pretense endorsement to the dealer's blanket liability policy. The trial court expressly denied all remaining claims, including those made against Cobra. Thereafter, Auto-Owners filed a postjudgment motion pursuant to Rule 59, Ala.R.Civ.P. After conducting a hearing on the postjudgment motion, the trial court amended its judgment to clarify its previous judgment as follows:
 "(1). As a result of the transaction between DeLude and Allensworth on or about April 21, 1997, DeLude became owner of the subject automobile.
 "(2). Under the inducement of a fraudulent scheme by Allensworth, DeLude voluntarily parted with the automobile by entrusting it to Allensworth, a dealer in automobiles, whereupon Allensworth transferred the rights of DeLude to the Gogganses, who purchased the vehicle in the ordinary course of business and in good faith. See Section 7-2-403(2), Ala. Code 1975.[8]
 "(3). DeLude shall recover of Auto-Owners Insurance Company the sum of $18,500, which represents the value of the automobile lost by DeLude as a result of the fraudulent scheme of Allensworth.
 "(4) The Gogganses shall have a lien on the recovery by DeLude against Auto-Owners for the satisfaction of the judgment awarded to [the] Gogganses against DeLude. . . ."
The only party that appealed from the judgment was Auto-Owners Insurance. On appeal, Auto-Owners raises two issues: (1) that the trial court erred in finding that DeLude had title to the automobile, and (2) that he was fraudulently induced to surrender possession of the vehicle by a fraudulent scheme.
When reviewing a trial court's findings of fact after it has taken oral testimony, this court must follow the ore tenus rule, meaning that deference must be accorded the decision of the trial court in its factual determinations because the trial court personally heard the oral testimony and had the opportunity to observe and evaluate the witnesses; that court, therefore, is presumed to be in a better position to weigh the testimony and evidence. Webb Oil Co. v. Holmes, 660 So.2d 1316
(Ala.Civ.App. 1995). A trial court's judgment based on ore tenus evidence will not be reversed unless it is unsupported by the evidence so as to be plainly and palpably wrong and to amount to an abuse of discretion.Culpepper v. State, 587 So.2d 359 (Ala.Civ.App. 1991).
In Alabama, a certificate of title to a motor vehicle establishes prima facie title in favor of the individual or the business whose name appears on the certificate. Ala. Code 1975, § 32-8-39(d). A title certificate is not conclusive proof, however, and the ownership of the vehicle may be proved by other evidence. Eleven Automobiles v. State, 384 So.2d 1129
(Ala.Civ.App. 1980); Crowley v. State Farm Mut. Auto. Ins. Co.,591 So.2d 53 (Ala. 1991). In Crowley, our Supreme Court noted:
 "[T]he absence of ownership indicated by the absence of certificate of title . . . can be rebutted by other evidence of ownership. For example, ownership or a transfer of ownership can be established by evidence of a party's taking possession of the vehicle; by evidence of a bill of sale that manifests an intent to *Page 812 
 sell and transfer the vehicle and to grant dominion and control over it; and by evidence of a transfer of money for the vehicle."
591 So.2d at 55.
In addition to DeLude's testimony regarding the nature of the transaction between himself and Allensworth involving the vehicle, DeLude also presented a bill of sale reflecting Allensworth as the transferor and DeLude as the transferee, bank documents reflecting funds DeLude had borrowed to make the purchase, and a check in the amount of $13,500, which was drawn on DeLude's account and which was made payable to Allensworth, that represented the purchase price of the vehicle. There is ample evidence in the record to support the trial court's finding that DeLude successfully rebutted the inference, from the face of the certificate of title, that Allensworth was the owner of the vehicle at the time he fraudulently transferred the vehicle to the Gogganses.
The false-pretense endorsement to Auto-Owners dealer's blanket liability policy provided as follows:
 "The company will pay for loss or damage to the automobile that results from:
 "a. the insured's voluntarily parting with the automobile if induced to do so by any fraudulent scheme, trick, device, or false pretense, or
 "b. the insured's acquiring the automobile from a seller who did not have legal title."
The record contains substantial evidence to support the trial court's finding that DeLude was the actual title owner of the vehicle, and that he, therefore, had an insurable interest in the car. The evidence in the record demonstrates that Allensworth sold the vehicle to the Gogganses and that he never intended to repay DeLude for his investments or to give him his share of the profits on the vehicle. After DeLude discovered that the vehicle had been sold to the Gogganses, Allensworth tendered him a worthless check in the amount equivalent to DeLude's investment in the vehicle plus one-half of the profits upon the resale, based upon the $18,500 purchase-price figure that Allensworth had quoted DeLude. DeLude testified that he later discovered that Allensworth had defrauded others in a similar manner on previous occasions.
Auto-Owners further asserts that if, in fact, DeLude is entitled to benefits under the policy endorsement, the liability of Auto-Owners is limited to the cost of repossession ($800) plus the expense of making duplicate keys and related work. We note that the false-pretense endorsement states that it is subject to the following provisions:
 "(1) Payment will be only for that amount of loss or damage in excess of the actual cash value of any property delivered to the insured in full or partial payment for the automobile.
 "(2) In the event the automobile is recovered, the limit of the Company's liability for loss or damage shall not exceed the actual cost and expense of recovering and returning the automobile plus the cost of any necessary repairs."
Auto-Owners argues that, under subsection (2), the limit of its liability is the cost of recovery of the vehicle.
From the unique set of circumstances presented here, we conclude that DeLude did not actually "recover" the vehicle as contemplated by subsection (2) of the false-pretense endorsement. Instead of a vehicle being stolen from the lot by a third party, or other circumstances in which the mere physical repossession of the vehicle would serve to mitigate a dealer's damages, the vehicle involved in this case, after having been obtained by Allensworth *Page 813 
under false pretenses, was transferred to good-faith purchasers for value in the ordinary course of Allensworth's business as a vehicle merchant.See § 7-2-403, Ala. Code 1975. Therefore, when DeLude recovered the vehicle, the "recovery" did not mitigate his damages because he was not permitted to keep the vehicle or the price for which he sold it. At the time Cobra repossessed the vehicle, the Gogganses, who were good-faith purchasers for value, had cut off DeLude's equitable title to the vehicle and had become the true owners of the vehicle. Thus, DeLude's "recovery" of the vehicle was actually in derogation of the rights of the true titleholder, and cannot properly be relied upon by Auto-Owners in an effort to avoid full coverage under its policy.
DeLude argues in his brief that his damages include the $18,500 judgment he must pay to the Gogganses as a result of Allensworth's fraudulent scheme, as well as additional consequential damages such as repossession costs, the cost of duplicate keys, the cost of clean-up, and interest. We agree, and we conclude that the judgment of the trial court is due to be affirmed in its entirety.
AFFIRMED.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Thompson, J., concurs in the result.
[1] The purchase price of the vehicle was $8,000; however, because the vehicle had been damaged in a collision, DeLude also paid Allensworth an additional $5,500 for repairs to be made to the vehicle.
[2] A dealer's blanket liability policy of insurance insures the entire inventory on a dealer's lot. In order to obtain such a policy, the dealer must provide his agent with a declared dollar estimate of his entire inventory. Thereafter, at stipulated intervals throughout the year, according to the terms of the policy, the dealer performs audits and delivers reports of those audits to the insurer.
[3] DeLude claims that the effective dates of the policy were from June 7, 1997, through June 8, 1998. Sue Goggans (of Goggans Insurance Agency) and Auto-Owners claim that the effective dates of the policy were from July 7, 1997 through July 8, 1998.
[4] The formal name of the insurance agency is not clear from the record.
[5] Sue Goggans testified that it was during this telephone conversation that she first learned that DeLude was claiming ownership of the car.
[6] It is undisputed that the Gogganses purchased the vehicle from Allensworth for $15,500. Allensworth misrepresented the purchase price to DeLude when he quoted the higher figure of $18,500.
[7] The N.A.D.A. Black Book value of the vehicle in July 1997 was $24,900.
[8] Section 7-2-403(2), Ala. Code 1975, provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business."