MOORE, Judge.
 

 Debra Lori Kelley (“the wife”) appeals from a judgment divorcing her from Jackie Douglas Kelley (“the husband”). The wife challenges the trial court’s division of property, the denial of her motions for contempt, and the denial of her request for an award of attorney fees. We affirm.
 

 Procedural Background
 

 On September 6, 2006, the wife filed a complaint seeking a divorce from the husband on the basis of incompatibility. Based on the wife’s complaint, the trial court entered an ex parte order, which stated: “Except to the extent permitted within the normal course of business, [the husband] is hereby enjoined from disposing, selling, transferring, moving, [or] encumbering ... any assets owned or held during the course of the marriage, including marital assets and property of [the wife].” After a pendente lite hearing, the husband was ordered, among other things, to pay $400 per month to the wife as pendente lite alimony and to maintain health insurance for the benefit of the wife.
 

 Shortly after the entry of the pendente lite order, the wife filed a motion for contempt, asserting, among other things, that the husband had failed to pay alimony in accordance with the pendente lite order. On April 12, 2007, the husband sought an order allowing him to sell certain real property; he represented to the trial court that he needed to sell the property identified in his motion so that he could pay alimony and his living expenses. After a hearing, the trial court granted the husband’s motion conditioned upon the husband’s receiving one-half of the proceeds from the sale of the real property and the husband’s forwarding the other one-half of the proceeds to his attorney to be held in trust pending further order of the trial court.
 
 [1]
 

 
 *537
 
 During the pendency of the litigation, the wife filed multiple motions seeking a finding of contempt against the husband. In those motions, she asserted that the husband had violated the pendente lite order by failing to pay alimony, by failing to maintain health insurance for the benefit of the wife, and by transferring, selling, or otherwise disposing of marital assets. The wife also sought a restraining order and a hearing. On June 27, 2008, after hearing arguments on one of the wife’s motions, the trial court entered an order, reserving a decision on the wife’s motion for a finding of contempt until the final hearing, but specifically stating that the pendente lite order remained in effect and directing the parties to strictly comply with all the terms of that order. Subsequent to the entry of that order, the wife again moved for a finding of contempt based on the husband’s alleged failure to comply with the pendente lite order.
 

 On May 11, 2009, after a hearing at which ore tenus evidence was presented, the trial court entered its judgment of divorce. The trial court divided the parties’ personal property between the parties. The trial court also divided the parties’ remaining real property into two essentially equal groups, referred to in the judgment as “Paragraph A” and “Paragraph B,” and instructed the wife to select whether she wished to have the properties listed in Paragraph A or Paragraph B as a property settlement. In addition, the trial court ordered the husband to pay to the wife $20,000 as a property settlement “regarding disputed property values.” The trial court awarded the wife no alimony and ordered each party to be responsible for their own debts and attorney fees. The trial court’s judgment did not address the wife’s requests for a finding of contempt against the husband or the wife’s claimed damages flowing from the husband’s alleged violations of the pendente lite order.
 

 On May 29, 2009, the wife filed, pursuant to Rule 59, Ala. R. Civ. P., a motion to alter, amend, or vacate the trial court’s judgment. On July 31, 2009, after a hearing, the trial court entered an order granting in part and denying in part the wife’s postjudgment motion. The trial court modified its property award as it related to certain guns owned by the parties, but stated generally that it denied the wife’s postjudgment motion in all other respects.
 

 The wife appeals. On appeal, she asserts that the trial court erred in failing to include in its valuation of the marital estate the property disposed of by the husband in violation of the pendente lite order, that the trial court exceeded its discretion in denying her motions for contempt, and that the trial court exceeded its discretion in failing to award her attorney fees.
 

 Evidentiary Background
 

 The evidence pertinent to this appeal shows that the parties married on March 14, 1997, and that they separated in late August 2006, when the husband moved the wife out of the house while she was on vacation based on his belief that the wife had engaged in extramarital affairs.
 
 [2]
 
 The wife testified that, at the time of the parties’ separation, the parties owned and operated a sole proprietorship doing business as “Kelley Pile Driving and Excavating”
 
 *538
 
 (“the business”). According to the wife, at the time of the parties’ separation, the business owned a significant amount of heavy equipment
 
 [3]
 
 with a value, after deducting liens on the equipment, of $396,355,
 
 [4]
 
 and, in 2006, the business produced a gross income of $935,486.
 
 [5]
 
 The parties also owned joint bank accounts with deposits totaling $67,976.31. Additionally, it was undisputed that, at the time of their separation, the parties owned 15 parcels of real property that appraised for tax purposes at a value of $304,211, and upon which the parties were indebted in the amount of $76,913.20. The parties also owned nine mobile homes debt-free, one of which they used as a primary residence on their “Willow Creek property,” one of which stood on “the Riverhill Subdivision property,” and seven of which were located on “the Springville properties” and were rented out by the parties.
 
 [6]
 
 The husband disputed the wife’s itemization of the equipment owned at the time of the parties’ separation. The husband did not, however, dispute the wife’s fair-market valuation of the business equipment or her accounting of the real estate and bank accounts owned by the parties at the time of their separation.
 

 Following the parties’ separation, the wife moved into the mobile home located on the Riverhill Subdivision property, property that she had purchased before the parties’ marriage and that had remained titled in only her name. At the time of the trial, the wife was employed as a truck driver earning approximately $600 per week. The husband had paid her $1,440 in alimony, but he had not paid any further sums due under the pendente lite order.
 

 The husband testified that the business began faltering in 2007 and that he ultimately went out of business because of economic conditions and his personal health problems. He had since become employed as an equipment operator earning $500 per week. The husband testified that he had sold off all the business equipment to pay bills.
 
 [7]
 
 The record does not disclose the sale price for every piece of equipment sold, but the sale prices mentioned in the record were far below the undisputed fair-market value. The husband did not seek permission of the court to sell the equipment because, the husband testified, he considered those sales to be within the normal course of his business. The wife introduced evidence indicating that the husband had retained possession of some of the equipment sold, but the
 
 *539
 
 husband testified that that equipment had merely been loaned back to him or used for the new owner’s purposes.
 

 The husband also had sold several of the 15 parcels of real property owned by the parties. The husband testified that he had sold the Willow Creek property
 
 [8]
 
 and the two Springville properties, along with the seven mobile homes on the Springville properties,
 
 [9]
 
 to a close friend, at what the wife characterized as discounted prices. That friend was allowing the husband to continue to reside on the Willow Creek property rent-free until after the divorce was finalized.
 
 [10]
 
 The husband testified that he had not collected rent from the mobile homes on the Springville properties after he had sold them to his friend in July 2007, but the husband’s federal income-tax records indicated otherwise. Hence, the wife testified that she believed the husband was still collecting rent from those properties at the time of the trial. The husband also had sold his interest in three parcels, known as “the 15th Street properties,” to his father for $2,500, although they were appraised for tax purposes at $34,816.
 
 [11]
 
 The husband testified that he had “sold” another piece of property, “the Highway 431 property” used in the business, by allowing a friend to simply assume the payments on that property.
 
 [12]
 
 The husband did not seek the court’s permission to sell those properties; however, the husband had sought and received permission from the court to sell another piece of real property in April 2007, “the Hill Avenue property,” subject to the condition that he place one-half of the proceeds in trust with his attorney, which the husband had not done, instead applying all the proceeds to “pay bills.”
 

 The husband testified that, while his wife had been on vacation in August 2006, he had closed all of their bank accounts. He testified that he had spent approximately $42,000 of the over $67,000 removed from those accounts on business expenses but that he also had bought a house on Norris Avenue for approximately $18,000.
 
 [13]
 
 The husband further testified that he had used the proceeds from the equipment and real-property sales to ex
 
 *540
 
 tinguish debts to creditors listed in an exhibit introduced into evidence; however, that exhibit did not specifically identify the amount of the debt paid. The husband additionally testified that he had paid an outstanding tax debt of the parties with the proceeds from the sale of the Spring-ville properties. The husband stated that he remained $78,638.38 in debt at the time of trial, although he later testified that most of that debt was incurred after the parties had separated. The husband testified that the only marital assets still existing at the time of the trial included the mobile homes in which he and the wife resided and a few unsold parcels of real property.
 

 Analysis
 

 The wife first asserts that the trial court exceeded its discretion in its division of the marital property. She complains that the husband sold or transferred all the parties’ business equipment and the bulk of their real property at less than their fair-market value during the pendency of the divorce action and that the husband’s misconduct should be treated as a dissipation of the marital assets. As a result, she asserts that the trial court exceeded its discretion in failing to include in its valuation of the marital estate the value of those assets disposed of by the husband in violation of the pendente lite order.
 

 Although this court previously has reviewed cases involving allegations of dissipation of marital assets, the resolution of such cases has not heretofore included a discussion of the factors to be considered in determining whether a spouse has dissipated or wasted marital assets in contemplation of a divorce.
 
 See, e.g., Pate v. Guy,
 
 942 So.2d 380 (Ala.Civ.App.2005) (addressing wife’s allegation that husband had dissipated vast amounts of marital assets before parties’ divorce by reference to the ore tenus rule and the broad discretion enjoyed by a trial court in dividing marital property). Although other states vary in their treatment of this issue, we find general guidance in 24 Am.Jur.2d
 
 Divorce and Separation
 
 § 526 (2008). That treatise indicates that, in determining whether the use of marital assets amounts to a dissipation of those assets, a court must determine whether the use of the asset was for a selfish and wasteful purpose or was merely an ill-advised use but one not so far removed from that normal or typical for the marriage. Factors identified as appropriate to a determination of whether dissipation of marital assets has occurred include:
 

 “(1) the proximity of the expenditure to the parties’ separation; (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage; (3) whether the expenditure benefited the joint marital enterprise or was for the benefit of one spouse to the exclusion of the other; and (4) the need for, and the amount of, the expenditure.”
 

 24 Am.Jur.2d
 
 Divorce & Separation
 
 § 526. Although some jurisdictions have adopted a differing approach, as a general rule a dissipated asset is included in the marital estate and awarded to the spouse who wasted the asset.
 
 See
 
 24 Am.Jur.2d
 
 Divorce & Separation
 
 § 542 (2008) (citing cases).
 

 We also note that, because whether a dissipation of assets has occurred is a consideration in a division of marital property, the resolution of that issue is subject to the broad discretion enjoyed by trial courts. A trial court’s judgment dividing marital property must be plainly and palpably beyond the scope of that discretion before the judgment can be disturbed on appeal.
 
 See McClelland v. McClelland,
 
 841 So.2d 1264, 1271 (Ala.Civ.App.2002). Additionally, “ ‘ “[property di
 
 *541
 
 visions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court.” ’ ”
 
 Ex parte Drummond,
 
 785 So.2d 358, 361 (Ala.2000) (quoting
 
 Morgan v. Morgan,
 
 686 So.2d 308, 310 (Ala.Civ. App.1996), quoting in turn
 
 Duckett v. Duckett,
 
 669 So.2d 195, 197 (Ala.Civ.App. 1995)). “A court has no fixed standard to follow in awarding alimony or in dividing marital property. Rather, the award or division need only be equitable and be supported by the particular facts of the case.”
 
 Ex parte Elliott,
 
 782 So.2d 308, 311 (Ala.2000).
 

 Business Equipment
 

 The wife asserts that, during the pendency of the divorce litigation, the husband sold all the business equipment at far below its collective value of $527,200. The wife, however, admitted that her $527,200 valuation of the business equipment was based upon the original purchase price of the equipment, that her valuation did not include any depreciation, and that the equipment had liens collectively totaling $130,845. The husband denied that, at the time of the parties’ separation, the parties had owned all the equipment listed by the wife, claiming that the parties had never owned some of the items listed by the wife and that they had sold other pieces of equipment claimed by the wife before their separation.
 

 The husband also testified that, before the parties’ separation, they routinely bought and sold equipment to pay their business and living expenses. The husband testified that, by the time of the trial, he had disposed of certain equipment at auction and in other transactions in order to pay off the hens on the equipment, to pay business debts, and to pay living expenses. The husband also testified that, beginning in 2007, his business was no longer financially productive or feasible and he had been forced to close it.
 

 Thus, the trial court heard disputed testimony regarding the extent of the equipment the parties owned at the time of their separation. As the trier of fact, the trial, court was required to resolve those disputed issues. Additionally, the trial court could have relied on the husband’s testimony indicating that, during the parties’ marriage and in the normal course of business, the parties had sold equipment as needed to pay business and personal expenses. Because the husband testified that, during the pendency of the litigation, he had sold all the business equipment in order to pay debts and expenses of the business as well as his personal living expenses, the trial court could have found that the husband’s disposition of the business equipment was for a proper purpose, did not improperly reduce the value of the marital estate, and did not amount to an improper dissipation of the marital assets.
 
 [14]
 

 Real Property
 

 The wife also complains that the husband disposed of multiple parcels of real property during the pendency of the litigation and that those sales or transfers reduced the value of the marital estate. The husband admitted that he and the wife had owned the Springville properties free and clear of any debt; that those properties, without including the value of the mobile homes located thereon, were valued at $34,640; and that he had sold those properties, including the mobile homes located thereon, to a friend for $40,000. The
 
 *542
 
 friend acknowledged purchasing the Springville properties for $40,000, but the friend denied that he had purchased the mobile homes in the transaction. The husband testified that he had used the proceeds from that sale to pay off an outstanding Internal Revenue Service tax lien of approximately $40,355. The wife did not dispute the husband’s testimony that he had paid off a marital debt, thereby benefiting her as a result of that sale. Because the undisputed evidence established that the proceeds from the sale of the Springville properties were used to reduce marital debt, the trial court could have concluded that the husband’s sale of the Springville properties was for a proper purpose, did not reduce the value of the marital estate, and did not amount to a dissipation of the marital assets.
 

 The husband also acknowledged that he had transferred title to the Highway 431 property, on which existed a “chert pit” used in the business and which was valued at $65,200, to another friend in exchange for the friend taking up the mortgage payments on that property. The husband testified that that property had a lien against it and that its use was subject to permits issued by the Alabama Department of Environmental Management. According to the husband, those permits required that the owner “reclaim” the land at the expiration of those permits. According to the husband, the Littleton Cutoff property, valued at $33,480, had gone into foreclosure
 
 (see supra
 
 note 12). Again, that evidence was undisputed. In light of the husband’s testimony regarding the economic difficulties faced by the business in 2007 and 2008, the trial court would have been within its discretion in finding that the husband’s disposition of those properties was for a proper purpose, did not reduce the value of the marital estate, and did not amount to an improper dissipation of the marital assets.
 

 The husband also admitted that he had sold the Willow Creek property to a friend for $20,000. Other than generally testifying that he had paid “debts,” the husband did not specifically explain how he had used the proceeds from that sale, and the sale of that property, the parties’ marital homestead, was not within the normal course of the husband’s business. Additionally, the husband’s friend testified that he had paid the husband $30,000 for that property, thus disputing the husband’s testimony as to the sales price.
 

 The husband also acknowledged that he and his father had jointly owned the 15th Street properties free and clear of any debt and that he had sold his interest in the 15th Street properties to his father for $2,500, although those properties had a collective tax-assessed value of $34,816. When questioned why he had sold those properties at well below their fair value, the husband testified that he and his father had included a “buy-sell agreement” in the language of the deeds to the 15th Street properties requiring the husband to sell his interest in the properties to his father at the same price for which they had been purchased. The only deed introduced into evidence for any of the 15th Street properties did not include language supporting the husband’s claim. Other than that purported “buy-sell agreement,” the husband offered no explanation for his sale of his interest in the 15th Street properties; he also did not identify how he had spent the proceeds of that sale and what, if any, debts he had paid with the proceeds from that sale. That sale was not within the normal course of the business.
 

 We conclude that, based upon the evidence, the husband’s disposition of the Willow Creek property and the 15th Street properties amounted to a dissipation of the marital assets, i.e., those sales
 
 *543
 
 or transfers were not identified as occurring in the normal course of the business, the husband failed to identify a proper marital purpose for those sales or transfers, and the husband failed to establish that the proceeds from those sales or transfers did not reduce the value of the marital assets. Such a conclusion, however, does not compel a reversal of the trial court’s property division under the facts of this case.
 

 “ When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. ... When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court “will assume that the trial judge made those findings necessary to support the judgment.”
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank,
 
 608 So.2d 375, 378 (Ala.1992). Moreover, “[ujnder the
 
 ore tenus
 
 rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.”
 
 Transamerica,
 
 608 So.2d at 378.’ ”
 

 Farmers Ins. Co. v. Price-Williams Assocs., Inc.,
 
 873 So.2d 252, 254 (Ala.Civ.App. 2003) (quoting
 
 City of Prattville v. Post,
 
 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).
 

 Additionally, in
 
 Pate v. Guy, supra,
 
 this court affirmed the trial court’s division of marital property despite the mother’s allegations that the father had dissipated vast amounts of the parties’ marital assets. After summarizing the mother’s allegations of dissipation, this court recited the familiar principles of law applicable to property divisions. The court stated:
 

 “Although the mother insists that the property division is inequitable, we have previously noted that this court is authorized to disturb the trial court’s decision only if it is unsupported by the evidence and, therefore, ‘is unjust and palpably wrong.’
 
 See Scholl [v. Parsons,
 
 655 So.2d 1060, 1062 (Ala.Civ.App.1995) ];
 
 Kratz [v. Kratz,
 
 791 So.2d 971, 973 (Ala.Civ.App.2001) ];
 
 see also Ex parte Durbin,
 
 818 So.2d 404, 409 (Ala.2001). ‘It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’
 
 Ex parte Bryowsky,
 
 676 So.2d 1322, 1324 (Ala.1996). Furthermore, an appellate court may not substitute its judgment for that of the trial court; Alabama law does not allow this court to reweigh the evidence.
 
 See Ex parte Foley,
 
 864 So.2d 1094, 1098 (Ala.2003). In light of these principles, we cannot conclude that the trial court abused its discretion in this case.”
 

 Pate v. Guy,
 
 942 So.2d at 387.
 

 In this case, the trial court divided the marital property remaining at the time of the final hearing in an essentially even manner and then awarded the wife an additional $20,000 to account for any “dispute in values.” By awarding the wife an additional $20,000, the trial court could have implicitly factored in any misconduct by the husband in disposing of the Willow Creek property and 15th Street properties at below their fair values.
 

 Recognizing the broad discretion granted to a trial court in dividing marital property,
 
 see, e.g., McClelland v. McClelland,
 
 841 So.2d at 1271, and applying the presumption of correctness that attaches to a trial court’s implicit findings of fact,
 
 see, e.g., Farmers Ins. Co., supra,
 
 we conclude
 
 *544
 
 that the trial court’s division of the marital property is not clearly erroneous.
 
 See Ex parte Bryowsky,
 
 676 So.2d 1322, 1324 (Ala.1996) (“It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.”).
 

 Further, that the trial court appears to have awarded the wife less than one-half of the combined value of the Willow Creek property and the 15th Street properties does not rise to the level of reversible error.
 
 [15]
 
 “ ‘ “Property divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court.” ’ ”
 
 Ex parte Drummond,
 
 785 So.2d at 361. Because we cannot conclude that the wife’s award of the marital property was outside the trial court’s discretion, we must affirm the trial court’s property award.
 

 Contempt
 

 The wife next asserts that the trial court exceeded its discretion by failing to find the husband in contempt of court for his failure to pay alimony, to maintain health insurance on the wife, and to preserve the marital assets in accord with the pendente lite order. “[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.”
 
 Stack v. Stack,
 
 646 So.2d 51, 56 (Ala.Civ.App.1994).
 

 We cannot address the issues regarding unpaid alimony and health insurance because the wife failed to preserve those issues for appeal. “[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.”
 
 New Props., L.L.C. v. Stewart,
 
 905 So.2d 797, 801-02 (Ala.2004).
 
 See also Point Clear Landing Ass’n, Inc. v. Kaylor,
 
 959 So.2d 672, 677 (Ala.Civ.App.2006) (accord); and Rule 52(b), Ala. R. Civ. P.
 

 In this case, the trial court made no findings of fact; it simply entered a judgment divorcing the parties and dividing the marital property. Although the wife filed a postjudgment motion, the trial court’s failure to find the husband in contempt on the basis of unpaid alimony and lapsed health insurance was not asserted as error in that motion. As a result, the wife has failed to preserve those issues for appellate review.
 

 The wife did, however, assert in her postjudgment motion that the trial court had exceeded its discretion in failing to find the husband in contempt based on his failure to preserve the marital assets. Thus, that issue is properly before us. We have already concluded, however, that the trial court could have properly found that many of the husband’s transfers of equipment and property were made in the normal course of the business; thus, the trial court properly could have found that those transfers of equipment and property did not amount to a contemptible violation of the pendente lite order. Additionally, as pointed out above, the trial court’s proper
 
 *545
 
 ty division awarded the wife an additional $20,000 to account for disputed property values. Because the trial court could have determined that the husband’s violations of the pendente lite order had been adequately addressed and remedied by increasing the wife’s property award, we cannot conclude that the trial court exceeded its discretion in failing to make an express finding of contempt against the husband.
 

 Attorney Fees
 

 As her final argument, the wife asserts that the trial court exceeded its discretion in failing to award her attorney fees. “ “Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed.’ ”
 
 Lackey v. Lackey,
 
 18 So.3d 393, 402 (Ala.Civ.App.2009) (quoting
 
 Glover v. Glover,
 
 678 So.2d 174, 176 (Ala.Civ.App.1996)).
 

 The wife asserts that because of her limited income, the husband’s alleged misconduct, the complexity of this case, and the fact that two trials were required
 
 (see supra
 
 note 1), the trial court exceeded its discretion by not awarding her an attorney fee. We disagree. The evidence presented to the trial court indicated that, post-separation, the parties’ incomes were essentially the same. Additionally, as stated above, the trial court’s judgment could be construed as having addressed the husband’s violation of the pendente lite order in the form of an increased property award to the wife. The other factors relied on by the wife in support of her request for an award of attorney fees — the fact that two trials were held and the complexity of the case — impacted the husband to the same extent they impacted the wife. Accordingly, we find no reversible error in the trial court’s denial of the wife’s request for attorney fees.
 

 Finding no reversible error presented on appeal, we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, J., concur.
 

 BRYAN and THOMAS, JJ., concur in the result, without writings.
 

 [1]
 

 . On May 23, 2007, after a trial, the trial court entered a judgment of divorce. Both parties timely filed, pursuant to Rule 59, Ala. R. Civ. P., motions to alter, amend, or vacate the trial court's judgment. On August 28, 2007, the husband and the wife jointly filed a stipulation, pursuant to Rule 59.1, Ala. R. Civ. P., expressly agreeing on the record to indefinitely extend the 90-day period during which their postjudgment motions could remain pending in the trial court. On January 2, 2008, the trial court granted the husband’s and the wife’s motions to vacate the divorce judgment; the trial court ordered a new trial. The trial judge subsequently entered an order of recusal, and the case was reassigned to a different trial judge.
 

 [2]
 

 . The wife denied that she had committed adultery, and the trial court divorced the parties on the ground of incompatibility of temperament. Based on the trial court’s division of the marital property, it does not appear that the trial court found the husband's allegations of adultery to be credible or to be sufficient to impact the wife’s share of the marital estate.
 

 [3]
 

 . The wife testified that, at the time of the parties’ separation in August 2006, the business owned 44 pieces of heavy equipment. The husband denied the accuracy of that number.
 

 [4]
 

 . The husband agreed with the wife’s fair-market valuation of the business equipment, but he testified that, because he had needed money, he had sold the equipment at absolute auction, which had brought a much lower price than the fair-market value.
 

 [5]
 

 . The wife submitted an exhibit and income-tax records indicating that the business had generated reported gross receipts of $111,740 in 1997; $205,401 in 1998; $165,113 in 1999; $207,165 in 2000; $133,294 in 2001; $204,201 in 2002; $132,577 in 2004; $129,394 in 2005; $935,486 in 2006; and $200,678 in 2007. The wife also testified that the business had generated unreported income exceeding those figures.
 

 [6]
 

 . The wife submitted exhibits showing that the rental income from the mobile homes had amounted to $5,773 in 2002; $5,484 in 2003; $18,901 in 2004; $24,600 in 2006; and $18,500 in 2007. The exhibits did not disclose the rents received in 2005.
 

 [7]
 

 . The husband also testified that he had disposed of some equipment by transferring ownership in exchange for the new owner paying off the debt owed on the equipment.
 

 [8]
 

 . That property had been appraised for tax purposes as being worth $35,403 without the mobile home. The husband testified that he sold the property for $20,000. The friend who had purchased the property testified that he had paid the husband $30,000 for the property.
 

 [9]
 

 . The husband testified that he had sold the Springville properties and the seven mobile homes for $40,000, although the properties alone had been appraised for tax purposes at $34,640. The friend testified that he did not purchase the seven mobile homes.
 

 [10]
 

 . The friend testified that the husband was obligated to maintain the property while living there rent-free and that the friend hoped to sell the property to the husband or the wife once the divorce became final.
 

 [11]
 

 . The husband claimed that a buy-sell agreement entered into with his father and incorporated into the deeds of the properties required him to sell the 15 th Street properties to his father for $2,500; however, the language of the deed contained in the record did not support the husband’s testimony on this point.
 

 [12]
 

 . The husband testified that another property, referred to as "the Litdeton Cutoff property,” had gone into foreclosure.
 

 [13]
 

 . The record contains no further reference to the Norris Avenue property. The wife did not argue to the trial court that the husband's purchase of that property was an improper expenditure, the trial court’s division of the marital property made no reference to the Norris Avenue property, the wife made no mention of the property in her postjudgment motion, and the property is not specifically mentioned on appeal. We, therefore, conclude that any issue arising from the Norris Avenue property has been waived, and we need not address it further.
 

 [14]
 

 . Additionally, although the wife contended that the husband had not actually disposed of all the business equipment, the husband explained, apparently to the trial court’s satisfaction, his post-sale use of certain equipment.
 

 [15]
 

 . The trial court's award of $20,000 to the wife, to the extent it represents an award of her interest in those properties, represents approximately 38% of their combined value of $52,811 (Willow Creek property valued at $35,403 and the husband’s one-half interest in the 15th Street properties valued at one-half of $34,816 or $17,408).