THOMAS, Judge.
 

 Rosemary Posey Brown (“the exwife”) and James Earl Brown (“the exhusband”) were divorced in January 2006. This is the second time these parties have been before this court.
 
 See Brown v. Brown,
 
 26 So.3d 1210 (Ala.Civ.App.2007),
 
 affirmed, Ex parte Brown,
 
 26 So.3d 1222 (Ala.2009).
 

 In January 2007, while the appeal from the divorce judgment was pending in this court, both the exwife and the exhusband filed petitions seeking to hold the other in contempt. The exwife’s petition requested that the exhusband be held in contempt for failing to pay a $60,000 property settlement as ordered by the divorce judgment.
 
 [1]
 
 The exhusband’s petition requested that the exwife be held in contempt for failing to pay the mortgage payment on the former marital residence. Both petitions were placed on the administrative docket pending the resolution of the appeal.
 

 In October 2009, after this court dismissed the application for rehearing in the appeal, the trial court placed the contempt petitions on the active docket. The exhus-band filed a pleading requesting that the two contempt petitions be consolidated and requesting to be able to supplement or
 
 *31
 
 amend his pleadings with additional requests to hold the exwife in contempt. The trial court granted the exhusband’s motion. In his “supplemental” pleadings, the exhusband requested that the exwife be held in contempt for (1) failing to convey a timeshare she was ordered to convey in the divorce judgment and that she be required to do so or to pay the exhusband its value, (2) failing to pay certain credit-card debts that the exhusband contended she was required to pay pursuant to the amended divorce judgment, and (3) failing to pay the mortgage payments on the former marital residence, which the exhus-band had paid to prevent foreclosure. The exhusband requested that he be awarded a judgment reimbursing him for the credit-card debt he had paid and the mortgage payments and other expenses he had paid in order to assist the exwife in maintaining the marital residence after the divorce.
 

 After a trial at which the only witness was the exhusband, the trial court entered a judgment ordering that the timeshare be transferred, that all other issues relating to realty were barred by res judicata, that the exwife was responsible for $45,530.17 in credit-card debt paid by the exhusband, and that the exwife was responsible for $34,703.63 in mortgage payments and other sums expended by the exhusband for the costs of maintaining the marital residence.
 
 [2]
 
 The judgment further awarded the exhusband a judgment against the ex-wife for those amounts. After her post-judgment motion was denied, the exwife appealed.
 

 On appeal, the exwife makes three arguments. She first argues that the exhus-band did not prove that the credit-card debt was incurred by her during the period after the parties’ separation. Secondly, as a companion argument, the exwife argues that the date of separation had been established as September 2003 by the law-of-the-case doctrine and that the parties had not separated in April 2003 as the exhusband had contended at the contempt trial. Finally, the exwife argues that the exhusband did not prove the reason for monthly cash payments he had made to the exwife during 2006 and that, as a result, he did not establish that she owed him for those payments under the divorce judgment.
 

 At the trial, the exhusband testified that the parties separated in April 2003. He said that he had not given the exwife permission to open credit cards in his name or to sign his name on applications or checks during the period of separation. The exhusband then testified concerning eight credit-card debts that he had paid off and which he contended were the responsibility of the exwife under the amended divorce judgment.
 

 Regarding the Chevron credit card, the exhusband testified that he had not signed the application for that card. He said that he had not authorized the exwife to apply for the card. He further testified that he had not received any benefit from the card and that he had not used it. When shown a request that a second card in the ex-wife’s name be provided for the exwife, the exhusband testified that he had not signed the document. The exhusband said that he paid off the debt associated with this card in the amount of $220.61.
 

 Regarding the AT & T credit card, the exhusband testified that he had not applied for that card. He said that the exwife “made application” for that account in April 2003 and further testified that he
 
 *32
 
 had received no benefit from the card and had not used it. According to the exhus-band, two transfer checks had been drawn against the account in June and July 2008. The exhusband testified that the he paid off a $7,656.68 balance on that card.
 

 Regarding the CitiBank credit card, which was applied for on April 24, 2003, the exhusband testified that he had not applied for the account. He also stated that he had never used the account. According to the exhusband, he had paid the $8,249.39 balance on that account.
 

 Regarding the MBNA credit card, the exhusband testified that the account had been opened well before the parties’ separation. However, the exhusband testified that the account was at a zero balance in October 2003.
 
 [3]
 
 He further testified that two checks had been drawn off of the account in August 2004: one to Fleet Mortgage and one to Chase Mortgage. According to the exhusband, neither check bore his signature. The exhusband said that he did not have any accounts at Fleet Mortgage or at Chase Mortgage that would have required him to write the checks on the MBNA account. Two other checks, at least one of which was made out to the exwife, were drawn off of the account in October and December 2004. The exhusband said that he paid a total of $18,974 in 2006 to pay off the balance on this account.
 

 Regarding the Discover credit-card account, the exhusband testified that the ex-wife had been added to the account as an authorized user in January 2003 without his authorization. He further testified that, as of January 2004, the account had a $1,325.19 balance. According to the ex-husband, in July 2006, when the exhus-band paid off the account, the balance was $2,179.17
 

 Regarding the Wal-Mart credit card, the exhusband testified that he had not applied for the card. He also said that he did not use the Wal-Mart card. The ex-husband did not testify regarding the date the account was opened. He stated that he had paid the $3,340 balance on the card in 2007.
 

 Regarding the Bank of America credit card, the exhusband testified that he had not applied for the card. He denied that the signature on the pre-approved application form purporting to be his was his actual signature; however, the exhusband said that the other signature on the application form was the exwife’s signature. He also stated that he had never used the card. Although the exhusband testified that the balance on the card was $9,364.75, he said that he had settled the account for $2,000.
 

 Finally, regarding the Discover loan, the exhusband testified that he had not applied for the loan. He did not testify on direct examination regarding the date the loan was made; however, on cross-examination he stated that the loan application was dated January 29, 2003. He did state that the loan had an outstanding, unpaid balance of $2,910.
 

 Notably, the exhusband did not enter into evidence any of the application forms for or the statements of any of the credit cards at issue. On cross-examination, he testified about a few of the charges on a few of the accounts when questioned by
 
 *33
 
 the exwife’s attorney. He explained that the other charges besides the two transfer checks drawn on the AT & T account in June and July 2003 were charges in June, July and August 2003 for items including prescriptions from USAA, for a USAA insurance premium, and for a day spa. The exhusband testified that neither he nor the exwife had USAA insurance coverage for prescriptions. Likewise, he testified that some of the charges on the CitiBank card were made in August and September 2003. The Discover card, he said, had a balance of $1,484.99 in August 2003, and, according to the exhusband, the Bank of America card had a balance of $6,662.24 on September 9, 2003.
 

 The pertinent portion of the amended divorce judgment regarding the exwife’s responsibility for debts she incurred during the parties’ separation reads as follows:
 

 “The [exwife] is responsible for all expenses incurred by her on credit cards in [the exhusband’s] name or the parties’ names jointly, since the date of separation. The [exwife] was awarded temporary alimony pending the divorcef,] and was responsible for all expenses she incurred, except for those specifically assigned to [the exhusband]. Further [the exwife] is to destroy all credit cards in her possession that have the [exhus-band] listed as a responsible party. [The exwife] shall reimburse [the exhus-band] for any bills on these credit cards that he has paid.”
 

 The exwife argues that the exhus-band did not prove that the charges on the various credit cards were incurred by her or that they were incurred by her during the period after the parties separated. First, we must consider the exwife’s argument that, based on the law-of-the-case doctrine, the date of the parties’ separation was established as September 2003 despite the exhusband’s testimony at trial that the parties separated in April 2003. The ex-husband argues that the doctrine has no application here.
 

 “ ‘According to the doctrine of the law of the case, “whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.”
 
 Blumberg v. Touche Ross & Co.,
 
 514 So.2d 922, 924 (Ala.1987).... Because the trial court entered [its] judgment on the same record as that before the Court of Civil Appeals, the facts on which the Court of Civil Appeals’ decision was predicated continue to be the facts of the case, and, therefore, the Court of Civil Appeals’ conclusions in its ... opinion are the law of the case.’ ”
 

 Quimby v. Memorial Parks, Inc.,
 
 835 So.2d 134, 135-36 (Ala.2002) (quoting
 
 Ex parte S.T.S.,
 
 806 So.2d 336, 341-42 (Ala.2001)). Because our opinion recounted as a portion of the underlying procedural facts that the parties separated in September 2003,
 
 see Brown,
 
 26 So.3d at 1212, the exwife contends that this court’s opinion established that date as the date of separation.
 

 As the exhusband argues, however, the doctrine applies only to those issues
 
 considered
 
 and
 
 decided
 
 by the appellate court.
 
 See Hilb, Rogal & Hamilton Co. v. Beiersdoerfer,
 
 989 So.2d 1045, 1057 (Ala.2007) (“ ‘[T]he law of the case established by a prior appeal does not extend to preclude consideration of issues not presented or decided on the prior appeal.’ ”). In our opinion in
 
 Brown,
 
 this court recounted the date of separation stated in the briefs of the parties. However, that date had no bearing on the issues decided in the opinion. Thus, this court did not decide that
 
 *34
 
 the date of the parties’ separation was September 2003 such that reconsideration of the date of the separation of the parties was precluded by the law-of-the-case doctrine.
 

 We also note that the exwife requested that the trial court take “judicial notice” of the exhusband’s statement of facts in his petition for the writ of certiora-ri from this court’s affirmance in
 
 Brown,
 
 in which the exhusband had stated that the date of the parties’ separation was September 2003. While judicial notice may not have been the appropriate vehicle by which to draw the court’s attention to the exhusband’s admission that the date of the parties’ separation was September 2003, the exhusband did not object. The exhus-band’s reliance on that date in his petition for the writ of certiorari is equivalent to an admission of the fact, which the trial court would have been free to consider as evidence bearing on the actual date the parties separated.
 
 See Liberty Nat’l Life Ins. Co. v. Daugherty,
 
 840 So.2d 152, 161 (Ala.2002) (quoting 9 John Henry Wigmore,
 
 Evidence at Trials in Common Law
 
 § 2588 at 821-22 (Chadbourn rev. ed.1981)) (explaining the difference between an ordinary admission and a judicial admission). However, the exhusband’s statement in his brief regarding the date of separation was not a
 
 judicial
 
 admission, which is made for the specific purpose of conceding the truth of some fact at trial.
 
 Daugherty,
 
 840 So.2d at 161. Clearly, because the date of separation of the parties had no bearing on the issues presented and decided by both this court and our supreme court, the exhusband’s recitation of that fact was not for the purpose of conceding the truth of that fact. Thus, we cannot agree with the exwife that the ex-husband’s statement regarding the parties’ separation date established that the parties did indeed separate in September 2003. The trial court could properly have determined from the exhusband’s testimony that the parties separated in April 2003.
 

 We now turn to the exwife’s argument that the evidence at trial did not establish that she made the charges on the credit cards that the exhusband claimed she was required to pay and that the evidence did not establish that the charges were made during the relevant period, after the parties separated.
 

 “Where the trial court has heard ore tenus evidence and has made findings based on that evidence, we presume that the trial court’s judgment based on those findings is correct, and it will be reversed only if the judgment is found to be plainly and palpably wrong, after a consideration of all the evidence and after making all the inferences that can be logically made from the evidence,
 
 Clark v. Albertville Nursing Home, Inc.,
 
 545 So.2d 9 (Ala.1989); and
 
 King v. Travelers Ins. Co.,
 
 513 So.2d 1023 (Ala.1987); and the trial court’s judgment will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.
 
 Clark v. Albertville Nursing Home, Inc., supra; McCrary v. Butler,
 
 540 So.2d 736 (Ala.1989).”
 

 Adams v. Boan,
 
 559 So.2d 1084, 1086 (Ala.1990). “ ‘The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court’s decision is supported by reasonable inferences to be drawn from the evidence.’ ”
 
 Knight v. Beverly Health Care Bay Manor Health Care Ctr.,
 
 820 So.2d 92, 98 (Ala.2001) (quoting
 
 Ex parte Pielach,
 
 681 So.2d 154, 154-55 (Ala.1996)).
 

 The exhusband argues that the trial court had before it sufficient evidence from which to determine that the exwife owed the exhusband for the sums he had expended to retire the credit-card debt. He
 
 *35
 
 notes that this court must assume that the trial court made those factual findings necessary to support the judgment,
 
 see Benefield v. Benefield,
 
 953 So.2d 418, 422 (Ala.Civ.App.2006) (“Because the trial judge made no specific findings of fact, we will assume that the trial judge made those findings necessary to support the judgment.”), and that the trial court and not this court is in the best position to consider the evidence presented and make decisions regarding the evidence.
 
 See, e.g., Auto-Owners Ins. Co. v. DeLude,
 
 827 So.2d 806, 811 (Ala.Civ.App.2001) (“When reviewing a trial court’s findings of fact after it has taken oral testimony, this court must follow the ore tenus rule, meaning that deference must be accorded the decision of the trial court in its factual determinations because the trial court personally heard the oral testimony and had the opportunity to observe and evaluate the witnesses; that court, therefore, is presumed to be in a better position to weigh the testimony and evidence.”). However, the crux of the exwife’s argument is not that the trial court improperly evaluated the evidence or improperly reconciled conflicting evidence, it is that the exhusband failed to present
 
 any
 
 actual evidence linking her to the credit card charges or to establish the period in which the credit-card debt was incurred. We agree with the exwife that the exhusband failed to present evidence that the
 
 all
 
 of the debt relating to the various cards was incurred by the exwife during the parties’ separation. However, we disagree with the exwife that the ex-husband failed to prove that any of the debt was incurred by her after the parties’ separation.
 

 Regarding all the credit cards, the ex-husband established that
 
 he
 
 had not incurred the debt associated with those cards. However, he did not specifically establish that the all of the debt associated with each of those cards was incurred by the exwife.
 
 [4]
 
 Instead, he left the trial court with what he argues is the reasonable inference that the exwife used those cards to amass substantial debt during the separation period that he subsequently retired.
 

 There is evidence that the exwife was an authorized user on one or more of the accounts, specifically the Discover and the Chevron. Moreover, an inference that the exwife opened the Chevron account arises because of the request for a second card in the exwife’s name that the exhusband denied authorizing. The evidence also reflects that the exwife’s signature appears on the Bank of America Visa card application, along with a signature purporting to be that of the exhusband, and that the exwife “made application for” the AT & T card in April 2003.
 

 The exhusband established that the CitiBank card was first opened in April 2003 and that the debt associated with it was incurred before September 2003, which would have been after the date of
 
 *36
 
 the separation in April 2003. Thus, the exwife was properly required to reimburse the exhusband for the debt associated with the AT & T card. Likewise, the evidence at trial created the inference that the ex-wife opened the Chevron card account during the period of separation. Therefore, the exwife was properly required to reimburse the exhusband for the debt associated with the Chevron card.
 

 Regarding the Bank of America card, the exhusband established that the balance due on the September 2003 statement was $6,662.24; although the exhusband did not testify to the date the account was opened, he did testify at the beginning of the trial that he had not authorized the exwife to open any credit-card accounts during the period of separation. Accordingly, the trial court could have inferred that the Bank of America credit card account was opened during the period of separation when the exhusband had not authorized the exwife to perform such tasks and therefore could have properly required the exwife to reimburse the exhusband for the debt associated with that card. The exhusband also did not establish the date the Wal-Mart account was opened; however, as explained above, the trial court could have inferred that the Wal-Mart account was also opened during the period of separation and, as a result, that the exwife was required to reimburse the exhusband for the amount of the debt associated with that card.
 

 Unlike the Bank of America and Wal-Mart credit-card accounts, the MBNA account was opened by the exhus-band well before the parties separated; however, the exhusband established that the account had a zero balance before September 2003. The exhusband testified on direct regarding two checks drawn off of the account to mortgage companies. Although the exhusband testified that he did not sign those checks, he did not testify that the exwife had done so. As noted above, on cross-examination, the exhus-band mentioned two other checks drawn off of the account. At least one of the checks, in the amount of $4,700, was written
 
 to the exwife.
 
 All four of the checks were written on the account in or after August 2004; thus, all of the charges incurred on that account were incurred after the date of separation. Because the trial court could have inferred that the exwife had written the check to herself and the other checks as well, we agree that the trial court could have included in the amount the exwife was required to reimburse the exhusband the amount he had paid on the MBNA account.
 

 Regarding the Discover card, the exhusband explained that the amount owed on the card in August 2003 was $1,400, indicating that the charges on that card were made before August 2003. However, the exhusband had testified that the Discover card account had been in existence since February 2002 and that the exwife had been an authorized user since January 2003; without the credit-card statements, there is no way to know whether the $1,400 owed on the account was charged after April 2003 or some time before April 2003. We cannot agree that the trial court properly included the Discover card account in the amount to be reimbursed to the exhusband. Similarly, the Discover loan was incurred in January 2003, a date preceding the parties’ separation. Thus, the exwife was not required to pay that particular loan under the amended judgment.
 

 Without evidence that all of the debts the exhusband retired were actually incurred by the exwife during the parties’ separation, we cannot conclude that the evidence supports the trial court’s judgment in the exhusband’s favor for the en
 
 *37
 
 tire $45,530.17. We therefore reverse the judgment of the trial court insofar as it ordered the exwife to pay the exhusband $45,530.17 to reimburse him for paying the credit-card debt. As noted above, certain credit-card debt was established to have been incurred by the exwife during the period of the parties’ separation. The trial court is instructed on remand to enter a judgment in favor of the exhusband for $40,441.
 

 The exwife also argues that the exhusband should not have been awarded a judgment reimbursing him for cash payments totaling $5,554.02 he made to the exwife between January 2006 and April 2006. The exwife agrees that the judgment required that she be responsible for the mortgage payments and that the ex-husband was properly awarded a judgment for those mortgage payments he made during 2006 and 2007. However, she contends that the exhusband was not ordered to make the cash payments to the exwife and that she was not obligated to repay those amounts, absent proof that they were connected to the mortgage payments she was required to make under the divorce judgment. The exwife, however, did not present this argument regarding the sufficiency of the evidence to support the trial court’s judgment awarding the exhus-band $34,703.63 to reimburse him for mortgage payments and “housing costs” relating to the former marital residence in her postjudgment motion. Her failure to raise this issue to the trial court precludes our consideration of it.
 
 New Properties, L.L.C. v. Stewart,
 
 905 So.2d 797, 801-02 (Ala.2004) (holding that a postjudgment motion is typically required to preserve issues regarding the sufficiency of the evidence in a non-jury trial where the trial court has not made specific findings of fact);
 
 Kelley v. Kelley,
 
 52 So.3d 534, 544 (Ala.Civ.App.2010) (same).
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . The exwife’s petition also sought that a third party, a private individual who held the second mortgage on the former marital residence, be enjoined from foreclosing the second mortgage. That claim was severed from the contempt claim and assigned to another circuit judge.
 

 [2]
 

 . The exwife’s request that the exhusband be held in contempt for failing to pay a $60,000 property settlement to the exwife was rendered moot by this court's reversal of the $60,000 award to the exwife in
 
 Brown,
 
 26 So.3d at 1219.
 

 [3]
 

 . On direct examination, the exhusband testified that the account had a zero balance in 2004 and that the checks were drawn on the account in the summer of 2003. On cross-examination, however, the exhusband testified in more detail and indicated that the account had a zero balance in September 2003 and that the checks were drawn on the account in 2004. Because the exhusband’s testimony on cross-examination is more logical, we have used that testimony regarding the dates.
 

 [4]
 

 . We recognize, as pointed out by the exhus-band, that the trial court’s amended divorce judgment required the exwife to be responsible for debt she incurred after the separation no matter whether the credit card upon which the debt was incurred was a joint card or one solely in the exhusband’s name. However, the exhusband seems to disregard the necessity for proving that the debt was actually incurred by the exwife. He says that he had “extensive documentation” that he did not admit into evidence at trial because the trial court questioned the need for such information since the judgment required the ex-wife to be responsible for the debt regardless of whose name was on the credit card. While the trial court’s reluctance to have “the complete dog and pony show” may be the reason the exhusband did not present his "extensive documentation,” the exhusband was not relieved of the burden of proving that the exwife was the party that incurred the debt during the period of separation, which he did not undertake to do.