THOMPSON, Presiding Judge.
 

 Scott Hood (“the father”) and Lori Hood (“the mother”) were divorced by a 2001 judgment of the trial court that incorporated an agreement reached by the parties. The divorce judgment awarded the mother custody of the two minor children born of the parties’ marriage, awarded the father a standard schedule of visitation, ordered the father to pay $419 per month in child support, and required the father to provide health insurance for the benefit of the parties’ children and to reimburse the mother for any noncovered medical expenses.
 
 [1]
 
 In addition, the divorce judgment stated that the parties waived all claims to alimony, but paragraph five of the judgment required the father to pay the mother $296 per month from income from a trust fund established for the benefit of the father; paragraph five of the divorce judgment also specified that the
 
 *1162
 
 amount to be paid to the mother pursuant to that paragraph would increase if the monthly benefits paid to the father increased.
 
 [2]
 

 In April 2007, the father filed a petition for a rule nisi, seeking to have the mother held in contempt for allegedly denying him visitation with the parties’ two children. Also in April 2007, the father filed a complaint seeking to modify custody and to terminate his obligation to pay the mother amounts pursuant to paragraph five of the divorce judgment. The mother responded to the father’s petition for a rule nisi by filing an answer denying the material allegations in that petition. She also counterclaimed, seeking an increase in the father’s child-support obligation and seeking to have the father held in contempt for his failure to pay certain amounts as required by the 2001 divorce judgment.
 

 The trial court conducted an ore tenus hearing. During that hearing, the mother requested that the trial court increase what she characterized as the father’s “alimony” obligation imposed by paragraph five of the 2001 divorce judgment. The father did not object to that request, and, therefore, we conclude that that claim was tried by the implied consent of the parties.
 
 See
 
 Rule 15(b), Ala. R. Civ. P.
 

 On June 11, 2008, the trial court entered an order in which it denied the mother’s contempt claim and her claim seeking an increase in child support, denied the father’s claim seeking a modification of custody, and granted the father’s claim seeking to modify visitation. The parties each filed a “postjudgment” motion, and the trial court entered an order denying those purported motions.
 
 [3]
 
 After submission to this court, we entered an order reinvesting the trial court with jurisdiction to enter a final judgment. On April 14, 2009, the trial court entered an order stating that all claims not addressed in the June 11, 2008, order were denied. The April 14, 2009, order, because it resolved the last of the pending issues between the parties, constituted the final judgment in this matter.
 
 Stockton v. CKPD Dev. Co.,
 
 936 So.2d 1065, 1069-70 (Ala.Civ.App.2005). The mother’s notice of appeal is deemed to have been held in abeyance until the entry of that final judgment,
 
 see
 
 Rule 4(a)(4), Ala. R.App. P., and the appeal is timely.
 

 The record indicates that, at the time of the parties’ divorce, the father earned approximately $20,000 per year; the father testified that, at that time, he earned $8 per hour working 40-50 hours per week at a marina. The father also received additional income from a trust fund created for his benefit. The father’s testimony indicates that he received $700 per month in income from the trust after the parties’ divorce, although he stated that the amount had increased during the period after the divorce but before the modification proceeding at issue in this appeal.
 

 At the time of the final hearing, the father lived in Wisconsin with his fiancée and their 13-month-old son. The father was employed by the Boys & Girls’ Club, earning $32,000 per year. The father ad
 
 *1163
 
 mitted that his income had increased dramatically since the date of the divorce. The father admitted that he had received $12,000 in income from the trust fund in 2006, but he stated that he could not recall his 2007 income from the trust. According to the father, the trust fund had paid him $700 per month in “rent” since the time of the divorce until shortly before the final hearing in this matter. The father stated that, at the time of the final hearing, he received $200 per month in “rent” from the trust. On his Rule 32, Ala. R. Jud. Admin., child-support forms,
 
 [4]
 
 the father listed his income as $2,666.67 in monthly income from his salary and $387 in “non-employment income,” for a total claimed monthly income of $3,053.67
 

 In the week before the final hearing in this matter, the father purchased a home in Wisconsin. He stated that he had used $85,000 from the trust fund as a down payment on the new home. It appears that the payment from the corpus of the trust fund accounts for the decrease in the monthly “rent” payment the father receives from the trust fund.
 

 The father testified that he had voluntarily increased his child-support payments so that, at the time of the hearing in this matter, he was paying the mother a total of $550 per month in child support rather than the $419 required by the 2001 divorce judgment. The father admitted that he does not personally pay his child-support obligation and that there is no child-support-withholding order in place. The mother presented evidence indicating that the father’s child-support obligation, as well as the $296 payment required by paragraph five of the divorce judgment, is paid from the trust fund each month by the trust-fund administrator.
 

 The mother testified that she has a two-year degree in paralegal studies but that she works as a waitress during the lunch shift; the mother has not worked as a paralegal for approximately 10 years. The mother testified that her schedule as a waitress allows her to take the children to school each morning and to pick them up after school. The mother testified that if she worked as a paralegal she would have to pay for after-school care for the children and that her current job allowed her to work fewer hours while having approximately the same income she would have if she worked as a paralegal and paid for after-school care. The mother first testified that she earned approximately $2,000 per month in her current job, but she later amended that testimony to claim monthly earnings of $1,500 per month. The income-tax returns the mother submitted into evidence indicate that she claimed earned income of $7,665 in 2005 and $6,976 in 2006.
 

 The mother asserted that the father was in contempt for failing to provide health-insurance coverage for the parties’ children. The father testified that the health-insurance coverage available through his employer in Wisconsin did not provide benefits in Alabama; he stated that he had made no other attempts to provide health insurance for the children. The father acknowledged that a health-insurance policy for the children was available through the private school the children attended, but he stated that he had not investigated that policy as a possible source of coverage for the children. At
 
 *1164
 
 the time of the final hearing, the children received health benefits under Medicaid. The father acknowledged that he was in violation of the requirement set forth in the divorce judgment that he provide health-insurance coverage for the parties’ children.
 

 The mother also testified that the father had failed to reimburse her for all uninsured medical costs as required by the divorce judgment. The mother claimed approximately $8,800 in unreimbursed medical expenses. The father acknowledged that he had received the mother’s claim seeking reimbursement of approximately $8,800 in counseling charges for one of the parties’ children. The father testified that he had not paid those expenses because, he asserted, they were not medical bills and had not been demonstrated to be medically necessary. The father did pay for braces for one of the children, and, at the final hearing in this matter, he expressed a willingness to pay for braces for the other child.
 

 The parties’ children attend a private school paid for by members of the father’s family. The father’s grandmother had paid the tuition for the children until her death. Thereafter, the father’s father (hereinafter “the grandfather”) had paid the children’s tuition for several years. The grandfather testified that, for a number of reasons, he would no longer pay the private-school tuition after the 2008-2009 school year. At the time of the final 'hearing in this matter, the mother was attempting to obtain financial aid in order to enable the children to continue attending the private school if the trial court denied the father’s custody-modification claim.
 

 With regard to the payment required under paragraph five of the divorce judgment, the father acknowledged that although the amount of income he received from the trust fund had increased after the parties’ divorce, he had not increased the payment to the mother as required by that paragraph. We note that paragraph four of the divorce judgment specifies that each party waived any claim to alimony. However, during the hearing in this matter, both parties characterized the $296 payment under paragraph five as “alimony,” and the mother has reported that payment as income on her income-tax returns.
 
 [5]
 

 On appeal, the mother argues that the trial court erred in denying her claim seeking a modification of child support. In general, a trial court may modify a parent’s child-support obligation upon a showing of a substantial and continuing change in circumstances.
 
 Berryhill v. Reeves,
 
 705 So.2d 505, 508 (Ala.Civ.App.1997). “Factors indicating a change of circumstances include a material change in the needs, conditions, and circumstances of the child.”
 
 State ex rel. Shellhouse v. Bentley,
 
 666 So.2d 517, 518 (Ala.Civ.App.1995). In addition, there is a presumption in favor of a child-support modification when the application of the Rule 32 child-support guidelines would result in a change in the support payment of more than 10%. Rule 32(A)(3)(a), Ala. R. Jud. Admin.;
 
 Ex parte Moore,
 
 805 So.2d 715, 719 (Ala.2001);
 
 Reeves v. Reeves,
 
 894 So.2d 712 (Ala.Civ.App.2004).
 

 The mother argues, and the father conceded before the trial court, that the father’s earned income has increased dramatically since the entry of the 2001 divorce judgment.
 
 See
 
 Rule 32(A)(3)(a). The mother contends that her gross income is $1,500 per month and that the
 
 *1165
 
 father’s gross income for purposes of calculating child support is $3,804 per month. The mother calculates the father’s gross income by adding to his $3,053.67 claimed total monthly income certain amounts paid on his behalf by the trust fund. Rule 32(B)(2)(a) defines “gross income” for the purposes of calculating child support as:
 

 “income from
 
 any
 
 source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest,
 
 trusts,
 
 annuities, capital gains, Social Security benefits, workers’ compensation benefits, unemployment insurance benefits, disability insurance benefits,
 
 gifts,
 
 prizes, and preexisting periodic alimony.”
 

 (Emphasis added.) Thus, the mother is correct that amounts paid on behalf of the father by the trust fund are income attributable to the father for the purposes of determining his child-support obligation.
 

 In denying the mother’s claim for a modification of child support, the trial court did not incorporate into its judgment the Rule 32 child-support forms.
 
 See
 
 Rule 32(E), Ala. R. Jud. Admin. (The child support forms “shall be filed in each action ... and shall be of record and shall be deemed to be incorporated by reference in the court’s child-support order.”). Thus, this court is unable to discern the trial court’s findings with regard to the amount of gross income attributable to each party for purposes of calculating child support, and we cannot determine how the trial court reached its determination that no modification of child support was warranted.
 

 Further, although the trial court could deviate from the application of the child-support guidelines, it made no findings regarding whether it had intended to do so, and it set forth no findings of fact justifying such a deviation.
 
 See
 
 Rule 32(A)(a), Ala. R. Jud. Admin, (setting forth reasons the trial court may deviate from the child-support guidelines);
 
 State Dep’t of Human Res. v. J.B.,
 
 628 So.2d 889, 891 (Ala.Civ.App.1993) (“[I]n order for a court to deviate from the guidelines, there must be
 
 written
 
 findings of fact based upon evidence presented to the court to support such a deviation.”); and
 
 Gautney v. Raymond,
 
 709 So.2d 1279, 1281 (Ala.Civ.App.1998) (“The trial court may deviate from the guidelines if it makes a written finding on the record indicating that the application of the guidelines would be unjust or inappropriate ... or where the court determines ... that application of the guidelines would be manifestly unjust or inequitable.”). We are unable to determine how the trial court reached its determination of the child-support issue, whether it intended to deviate from the child-support guidelines, and, if so, the reason for that deviation. Accordingly, we reverse that part of the trial court’s judgment pertaining to child support, and we remand the cause for the trial court to calculate the father’s child-support obligation pursuant to the Rule 32 child-support guidelines. We note that we do not necessarily agree with the mother’s calculation of the father’s gross monthly income, however; the amount of the father’s gross income under Rule 32 is a matter to be determined by the trier of fact. Further, the trial court may consider the father’s argument that the mother is voluntarily underemployed, as well as the other arguments asserted by the parties, in reaching its child-support determination.
 

 The mother also argues that the trial court erred in refusing to find the father in contempt for failing to comply with the terms of paragraph five of the divorce judgment. Specifically, the mother contends that the father was in contempt for his failure to increase the pay-
 
 *1166
 
 merit due her under paragraph five as the income he received from the trust fund increased. The mother cites
 
 T.L.D. v. C.G.,
 
 849 So.2d 200, 205 (Ala.Civ.App.2002), in which this court stated:
 

 “Whether a party is in contempt of court is a determination committed to the discretion of the trial court.
 
 See Coleman v. Coleman,
 
 628 So.2d 698 (Ala.Civ.App.1993). To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) or (D), Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order.
 
 See Carr v. Broyles,
 
 652 So.2d 299 (Ala.Civ.App.1994). Inability to pay is a defense to a contempt action in a child-support-arrearage case.
 
 Id.”
 

 In this case, the father openly acknowledged that he had not complied with that part of paragraph five that required him to increase the payment to the mother in proportion to the increase in the amount of funds he received from the trust fund. The father admitted that the funds he received from the trust fund had increased over the years since the divorce and that he had not increased the proportionate payment to the mother as required by paragraph five of the divorce judgment. The father does not contend that he was unable to pay the additional amount. Rather, he contends that the amounts paid by his family or the trust fund on his behalf exceed the amount he was required to have paid under paragraph five.
 

 However, although it is clear that the father did not comply with the provisions of paragraph five of the divorce judgment, the record does not contain any evidence presented to the trial court regarding when the amounts paid to the father by the trust fund increased or by how much those payments had increased. Thus, there was no way for the trial court to determine, based on the evidence presented to it, when, and by how much, the payments to the mother should have been increased pursuant to the requirements of paragraph five. Given the lack of evidence in the record pertaining to the specific facts of this issue, we cannot say that the trial court exceeded its discretion in failing to find the father in contempt for his failure to comply with the terms of paragraph five of the divorce judgment.
 
 [6]
 

 We note that, in asserting her argument pertaining to contempt with regard to paragraph five, the mother cursorily states that the trial court should have increased the payment required under paragraph five of the divorce judgment. The mother’s “argument” with regard to a modification of paragraph five is not properly supported by any citations to authority demonstrating that the payment imposed by paragraph five is an obligation subject to modification or that the circumstances of this case warrant such a modification. Accordingly, we decline to address the mother’s “argument” that paragraph five should have been modified.
 
 See Asam v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (An appellate court “will address only those issues properly presented and for which supporting authority has been cited.”).
 

 The mother also contends that the father should be held in contempt for his failure to provide health-insurance coverage for the parties’ children, as was required under the divorce judgment. The father presented evidence indicating that he had attempted to provide health-insurance coverage through his employer but that no health-insurance benefits were
 
 *1167
 
 available to the children from that policy because there are no providers in Alabama that accept that insurance. He also admitted that health-insurance coverage was available through the children’s school but that he had not investigated the possibility of obtaining that coverage.
 

 The divorce judgment stated that the father would maintain health and medical insurance for the benefit of the children until the children reach the age of 21 years. The judgment did not tie procurement of insurance to the father’s ability to obtain that insurance through his employer. The fact that the father’s employer in Wisconsin did not offer insurance that would provide coverage to his children in Alabama did not excuse the father from his obligation to maintain health-insurance coverage for the children. There was no evidence as to the cost of the health insurance provided by the children’s school; thus, there was no evidence indicating that the father was unable to afford that insurance. Also, there was no evidence indicating that the father even attempted to find other affordable insurance for the children.
 

 The father failed to obey the judgment requiring him to maintain health insurance for the children. Because he failed to investigate alternatives to employer-provided coverage, the father could not offer any evidence indicating that he had the inability to pay for the children’s health insurance. Accordingly, the trial court’s finding that the father was not in contempt for failing to provide the health-insurance coverage that was required by the divorce judgment is not supported by the evidence and is plainly and palpably wrong.
 
 Stack v. Stack,
 
 646 So.2d 51, 56 (Ala.Civ.App.1994) (“[Wjhether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.”). Thus, we must conclude that the trial court exceeded its discretion in not finding the father in contempt for his failure to provide the required insurance coverage. That portion of the judgment finding that the father was not in contempt for failing to procure insurance for the children is reversed, and on remand the trial court is to enter an order consistent with this opinion.
 

 The mother also contends that the trial court erred in failing to require the father to reimburse her for what she claims is $3,800 in medical expenses. The record demonstrates that the amounts for which the mother seeks reimbursement are for counseling services for one of the parties’ children. Before the trial court, the father disputed that the counseling services were necessary and that they constituted medical expenses subject to reimbursement under the divorce judgment. The mother did not address that argument before the trial court, nor has she addressed that argument before this court. It is not the function of an appellate court to create arguments or to perform research for an appellant,
 
 Spradlin v. Spradlin,
 
 601 So.2d 76, 79 (Ala.1992); to do so would run the risk of reversing the trial court’s judgment based on an argument or theory not presented to the trial court. Accordingly, given the arguments of the parties with regard to this issue, we cannot hold the trial court in error.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . The June 7, 2001, order divorcing the parties reserved the issue of child support until the parties submitted child-support forms required under Rule 32, Ala. R. Jud. Admin. The father’s testimony indicates that the trial court later determined the father’s child-support obligation to be $419 per month, but the record does not contain the order establishing that obligation. We note that the order establishing the father’s initial child-support obligation resolved the last of the pending issues between the parties with regard to their divorce, and, therefore, that order constituted the final divorce judgment.
 
 Stockton v. CKPD Dev. Co.,
 
 936 So.2d 1065, 1069-70 (Ala.Civ.App.2005). That order, however, is not contained in the record on appeal, and, therefore, we do not know the exact date of the final divorce judgment. Accordingly, for the purposes of this opinion, we refer to the divorce judgment as having been entered in 2001.
 

 [2]
 

 . Specifically, paragraph five of the divorce judgment states:
 

 “The parties agree that the [father] shall pay to the [mother] the sum of $296 per month from the income of the trust which is identified as 'The Helen Trane Hood Trust for the Benefit of Benjamin Scott Hood,’ with said monthly payment to increase by the same percentage as the increase in the monthly benefits increase which are paid to the [father] from said Trust.”
 

 [3]
 

 . A postjudgment motion filed pursuant to Rule 59, Ala. R. Civ. P., may only be taken in reference to a final judgment.
 
 Malone v. Gainey,
 
 726 So.2d 725, 725 n. 2 (Ala.Civ.App.1999).
 

 [4]
 

 . By order dated November 19, 2008, the Alabama Supreme Court amended Rule 32, Ala. R. Jud. Admin., including the child-support guidelines, effective January 1, 2009. By order dated February 25, 2009, the Alabama Supreme Court amended Rule 32(A)(4) and Rule 32(B)(7), Ala. R. Jud. Admin., effective March 1, 2009. Those amendments are not applicable in this case.
 

 [5]
 

 . In both 2005 and 2006, the mother reported $3,552 in alimony income, which represents 12 monthly payments of $296.
 

 [6]
 

 . We reject the mother’s argument that in denying her contempt claim the trial court "effectively eliminated paragraph five” from the divorce judgment. Nothing in the trial court's modification judgment has altered the father's obligation with regard to paragraph five.