THOMPSON, Presiding Judge.
 

 Lori Hood (“the mother”) appeals from the judgment of the Mobile Circuit Court in favor of Scott Hood (“the father”). For the reasons stated herein, we affirm the judgment in part and reverse it in part.
 

 This is the second appeal involving these parties related to their 2001 divorce. In the first appeal, this court recounted the following procedural history:
 

 “[The father] and [the mother] were divorced by a 2001 judgment of the trial court that incorporated an agreement reached by the parties. The divorce judgment awarded the mother custody of the two minor children born of the parties’ marriage, awarded the father a standard schedule of visitation, ordered the father to pay $419 per month in child support, and required the father to provide health insurance for the benefit of the parties’ children and to reimburse the mother for any noncovered medical expenses. In addition, the divorce judgment stated that the parties waived all claims to alimony, but paragraph five of the judgment required the father to pay the mother $296 per month from income from a trust fund established for the benefit of the father; paragraph five of the divorce judgment also specified that the amount to be paid to the mother pursuant to that paragraph would increase if the monthly benefits paid to the father increased.
 
 [2]
 

 “In April 2007, the father filed a petition for a rule nisi, seeking to have the mother held in contempt for allegedly denying him visitation with the parties’ two children. Also in April 2007, the father filed a complaint seeking to modify custody and to terminate his obligation to pay the mother amounts pur-
 

 suant to paragraph five of the divorce judgment. The mother responded to the father’s petition for a rule nisi by filing an answer denying the material allegations in that petition. She also counterclaimed, seeking an increase in the father’s child-support obligation and seeking to have the father held in contempt for his failure to pay certain amounts as required by the 2001 divorce judgment.
 

 “The trial court conducted an ore ten-us hearing. During that hearing, the mother requested that the trial court increase what she characterized as the father’s ‘alimony’ obligation imposed by paragraph five of the 2001 divorce judgment. The father did not object to that request, and, therefore, we conclude that that claim was tried by the implied consent of the parties.
 
 See
 
 Rule 15(b), Ala. R. Civ. P.
 

 “On June 11, 2008, the trial court entered an order in which it denied the mother’s contempt claim and her claim seeking an increase in child support, denied the father’s claim seeking a modification of custody, and granted the father’s claim seeking to modify visitation.
 

 Hood v. Hood,
 
 23 So.3d 1160, 1161-62 (Ala.Civ.App.2009) (footnote 1 omitted).
 

 
 *827
 
 Subsequent to the trial court’s entry of its June 11, 2008, order, .the trial court resolved the remaining issues, and the mother appealed. The mother contended that the trial court had erred in refusing to modify the father’s child-support obligation. Because this court was unable to ascertain how the trial court had determined whether to modify the father’s child-support obligation, we reversed the trial court’s judgment and remanded the cause for the trial court to calculate the father’s child-support obligation pursuant to Rule 82, Ala. R. Jud. Admin.
 
 Id.
 
 at 1165. The mother also contended on appeal that the trial court had erred in refusing to hold the father in contempt for failing to comply with paragraph five of the divorce judgment by failing to increase the payment she was due under that paragraph as the income he received from the trust fund increased. Addressing that contention, this court wrote that, although the father had “openly acknowledged that he had not complied with that part of paragraph five that required him to increase the payment to the mother in proportion to the increase in the amount of funds he received from the trust fund,” the mother had failed to present evidence from which the trial court could have determined “when, and by how much, the payments to the mother should have been increased pursuant to the requirements of paragraph five.”
 
 Id.
 
 at 1166. Thus, this court concluded that the trial court had not abused its discretion in failing to hold the father in contempt.
 
 Id.
 
 The record in the present appeal reflects that on, March 4, 2010, following remand, the trial court entered a judgment establishing a new amount for the father’s child-support obligation. No appeal was taken from that order.
 

 On October 27, 2009, before the trial court entered the order on remand, the father filed a petition to modify the divorce judgment. He alleged that there had been a material change in circumstances, and, based on that alleged change, he sought primary physical custody of the parties’ daughter and a modification of his child-support obligation. The father also sought the termination of his obligation under paragraph five of the divorce judgment to pay the mother $296 per month, which he characterized as an award of alimony, alleging that she had begun cohabiting with someone of the opposite sex. The father later amended his petition by withdrawing his claim for modification of custody and child support but adding a request for an offset against any child-support arrearage that had accrued based on the extended period the parties’ daughter had resided with him.
 

 The mother filed a motion to enforce the divorce judgment in which she alleged that the father had failed to pay her certain money required by paragraph five of the divorce judgment and that, at the time she filed her motion, he had discontinued making payments to her under that paragraph. The mother later filed a motion to hold the father in contempt for his failure to make payments to her pursuant to paragraph five of the divorce judgment.
 

 On September 17, 2010, the mother filed an amended motion to enforce the divorce judgment and to hold the father in contempt. In addition to realleging the claims from her previous motions, she asserted that, on March 4, 2010, the trial court had entered a judgment, following remand from this court, in which it had ordered the father to pay $616 per month as child support effective retroactively to June 2008 and to pay the mother $1,000 as an attorney fee. The mother asserted that the father had failed to pay the ordered child support and, thus, that a child-support arrearage had accrued and that he had failed to pay the attorney fee ordered
 
 *828
 
 by the trial court. She sought an order finding the father in contempt and awarding her an attorney fee.
 

 On October 18, 2010, the trial court held a bench trial at which it received ore tenus and documentary evidence. The father did not appear for the trial. The mother testified that she presently resided with the parties’ children and her boyfriend and that she had been living with her boyfriend for approximately two years. She stated that she had received a monthly payment of $296 from the father’s trust account beginning after the parties’ 2001 divorce until October 2009, at which time the father had terminated those payments. The mother admitted that she had claimed the $296 monthly payment from the father’s trust fund as income on her income-tax returns during the years she had received it, although she testified that the parties had considered the monthly payment a “property settlement.”
 

 The mother stated that her attorney had obtained documentation from the company that handled the father’s trust fund and that she had had her attorney prepare an itemization of all the benefits the father had received from the trust fund in excess of the $700 he had been receiving on a monthly basis from the trust fund at the time of the divorce. The mother testified that the father’s trust fund had been paying a portion of his child support and his student loans, as well as other benefits for the father, including $85,000 toward the purchase of a house for the father. She stated that, according to her attorney’s calculations, she was presently entitled to at least $58,970.47 in payments from the trust fund, as well as interest on that amount of $11,986.46.
 

 The mother submitted summaries of the documentation her attorney had obtained relative to the father’s trust fund. Those summaries showed what each party had received from the trust fund on a monthly basis, as well as one-time payments the trust fund had made to or on behalf of the father for items such as travel expenses, estate-planning work, and the purchase of a house. The summaries indicated that in March 2007 the trust fund began making monthly payments on behalf of the father for his student loans.
 
 [1]
 
 Those summaries were introduced into evidence without objection.
 

 The mother testified that the father owed her child support based on the fact that the trial court’s previous modification of the father’s child-support obligation had been retroactive to June of 2008. She also testified that she was seeking an attorney’s fee of $10,000.
 

 On November 9, 2010, the trial court entered a judgment terminating the father’s obligation under paragraph five of the parties’ divorce judgment to pay the mother a portion of the income of his trust. The trial court construed that obligation as periodic alimony and specifically found that it was due to be terminated because the mother had admitted to cohabiting with her boyfriend. The trial court also
 
 *829
 
 awarded custody of the parties’ daughter to the father and modified the father’s child-support obligation. The trial court denied the parties’ remaining claims. The trial court made only a single finding of fact in the judgment — that the mother had admitted to cohabiting with her boyfriend; the trial court made no findings of fact bearing on the mother’s allegations that the father was in arrears as to his child-support obligation or that he had failed to pay an attorney fee to her as the trial court had previously ordered.
 

 The mother filed a motion to alter, amend, or vacate the judgment in which she argued that the father’s request for custody of the parties’ daughter was no longer pending at the time of the trial and that no evidence was put forward in support of that request. She also argued that the trial court had erred in interpreting paragraph five of the divorce judgment as providing an award of periodic alimony to the mother and that the trial court should have held the father in contempt for failing to pay amounts that were due pursuant to that provision. The trial court granted the mother’s motion in part and set aside those portions of its judgment modifying custody of the parties’ daughter and modifying the father’s child-support obligation. The trial court denied the balance of the mother’s postjudgment motion. The mother appeals.
 

 On appeal, the mother contends that the trial court erred in concluding that the award of a portion of the income from the father’s trust constituted an award of periodic alimony rather than an award of alimony in gross.
 
 [2]
 
 She points out that paragraph four of the divorce judgment provides that “[e]ach party waives all claims to alimony, past, present, and future,” and that she testified at the hearing that the award of funds in paragraph five had “always been a property settlement.” Thus, she argues, that portion of the trial court’s judgment terminating the father’s obligation to pay funds to the mother under paragraph five of the divorce judgment should be reversed. We disagree.
 

 In
 
 Daniel v. Daniel,
 
 841 So.2d 1246 (Ala.Civ.App.2002), this court discussed the difference between periodic alimony and alimony in gross:
 

 “Our supreme court has explained the difference between periodic alimony and alimony in gross.
 
 Hager v. Hager,
 
 293 Ala. 47, 299 So.2d 743 (1974). Alimony in gross is considered ‘compensation for the [recipient spouse’s] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple’s jointly owned assets is not practicable.’
 
 Hager v. Hager,
 
 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award ‘must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested.’
 
 Cheek v. Cheek,
 
 500 So.2d 17, 18 (Ala.Civ.App.1986). It must also be payable out of the present estate of the paying spouse as that estate exists at the time of the divorce.
 
 Hager v. Hager,
 
 293 Ala. at 55, 299 So.2d at 750. In other words, alimony in gross is a form of property settlement.
 
 Hager v. Hager,
 
 293 Ala. at 54, 299 So.2d at 749. An alimony-in-gross award is generally not modifiable.
 
 Id.
 

 
 *830
 
 “Periodic alimony, on the other hand, ‘is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse].’
 
 Hager v. Hager,
 
 293 Ala. at 55, 299 So.2d at 750. Its purpose ... ‘is to support the former dependent spouse and to enable that spouse,
 
 to the extent possible,
 
 to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage.’
 
 O’Neal v. O’Neal,
 
 678 So.2d 161, 165 (Ala.Civ.App.1996) (emphasis added). Periodic alimony is modifiable based upon changes in the parties’ financial conditions or needs, such as an increase in the need of the recipient spouse, a decrease in the income of the paying spouse, or an increase in the income of the recipient spouse.
 
 See Tibbetts v. Tibbetts,
 
 762 So.2d 856, 858 (Ala.Civ. App.1999). The paying spouse’s duty to pay periodic alimony may be terminated by petition and proof that the recipient spouse has remarried or is cohabiting with a member of the opposite sex. Ala. Code 1975, § 30-2-55.”
 

 841 So.2d at 1250.
 

 As previously noted, paragraph five of the divorce judgment provides:
 

 “5. The parties agree that the [father] shall pay to the [mother] the sum of $296 per month from the income of the trust which is identified as ‘The Helen Trane Hood Trust for the Benefit of Benjamin Scott Hood,’ with said monthly payment to increase by the same percentage as the increase in the monthly benefits increase which are paid to the [father] from said trust.”
 

 The amount of an award of alimony in gross is required to be certain,
 
 see Daniel,
 
 supra; however, the award made in this paragraph is not. First, there is no provision limiting the amount of time during which the award is to be paid. Second, the award was subject to an automatic increase upon the happening of an uncertain future event, i.e., an increase in benefits paid to the father. Thus, there is no way to determine the amount of the award to which the mother was entitled.
 
 See Rose v. Rose,
 
 70 So.3d 429, 433 (Ala.Civ.App. 2011) (“Additionally, the former wife’s award of a share of the former husband’s benefits cannot be deemed to constitute an unmodifiable division of marital property, or alimony in gross, because both the time at which the former wife’s award will completely vest and the total amount the former wife will receive are
 
 indefinite.”).
 

 Furthermore, the parties have treated the award as constituting periodic alimony rather than as nonmodifiable alimony in gross. For example, both parties have sought a modification of the award, the mother in the action that led to the previous appeal and the father in the action leading to the present appeal. Moreover, the mother testified that she has consistently treated her receipt of the monthly payment called for in paragraph five as income on her income-tax returns, which is not consistent with its treatment as alimony in gross but, instead, is consistent with its treatment as periodic alimony.
 
 See Rose,
 
 70 So.3d at 433 (“The record also shows that the former wife has listed her share of the former husband’s benefits as income in her tax filings — a characterization that would not be valid if the former husband’s benefits had been divided as marital property.”);
 
 Adkins v. Adkins,
 
 61 So.3d 1071, 1077 (Ala.Civ.App.2010) (“The payments are also designated as taxable income to the former wife and tax deductible for the former husband, as is the case with periodic alimony.”);
 
 Brunner v. Ormsby,
 
 10 So.3d 18, 23 (Ala.Civ.App.2008) (“The parties also stated their intent that
 
 *831
 
 the payments not be treated as taxable income by the former wife or as a tax deduction by the former husband. The former husband admits in his brief that this provision lends support to the former wife’s argument that the alimony award was intended to be ‘in gross.’ ”).
 

 The fact that the parties purported to waive their “claims to alimony, past, present and future,” in a separate paragraph of the divorce judgment does not persuade us that paragraph five of the divorce judgment provided for an award of alimony in gross rather than an award of periodic alimony. The characterization of an award in a divorce judgment as alimony in gross or periodic alimony is properly determined from the substance of the award rather than from its form or label.
 
 See Kenchel v. Kenchel,
 
 440 So.2d 567, 569 (Ala.Civ.App.198B). In the present case, as we have discussed, the substance of the award in paragraph five comports more readily with its characterization as periodic alimony rather than as alimony in gross, as does the parties’ intent, as gleaned from their treatment of the award after the entry of the divorce judgment.
 

 Because paragraph five of the divorce judgment provided for an award of periodic alimony rather than an award of alimony in gross, we conclude that the trial court did not err in terminating the father’s obligation under that paragraph. Section 80-2-55, Ala.Code 1975, provides, in relevant part:
 

 “Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex.”
 

 The mother admitted that she had been cohabiting with a person of the opposite sex since at least November 2009. Thus, the trial court properly terminated the father’s periodic-alimony obligation.
 

 The mother next contends that the trial court abused its discretion in denying her motion for contempt because, she says, the evidence was undisputed that the father had violated the terms of paragraph five of the divorce judgment by failing to increase the payments to the mother required thereunder in the same proportion that the trust fund had increased its payments to him. As to certain alimony payments under that paragraph due before November 2009, we agree.
 

 Discussing contempt, this court has written:
 

 “ ‘ “Civil contempt” is defined as a “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” Rule 70A(a)(2)(D), Ala. R. Civ. P. The determination of whether a party is in contempt is within the sound discretion of the trial court, and that determination will not be reversed absent a showing that the court exceeded the limits of its discretion.
 
 Stack v. Stack,
 
 646 So.2d 51 (Ala.Civ.App. 1994).’
 

 “Routzong v. Baker,
 
 20 So.3d 802, 810 (Ala.Civ.App.2009). ‘ “The failure to perform an act required by the court for the benefit of an opposing party constitutes civil contempt.”
 
 Carter v. State ex rel. Bullock County,
 
 393 So.2d 1368, 1370 (Ala.1981).’
 
 J.K.L.B. Farms, LLC v. Phillips,
 
 975 So.2d 1001, 1012 (Ala. Civ.App.2007). Furthermore, ‘ “[t]he purpose of a civil contempt proceeding is to effectuate compliance with court orders and not to punish the contemnor.”
 
 *832
 

 Watts v. Watts,
 
 706 So.2d 749, 751 (Ala. Civ.App.1997).’
 
 Hall v. Hall,
 
 892 So.2d 958, 962 (Ala.Civ.App.2004).”
 

 Reed v. Dyas,
 
 28 So.3d 6, 8 (Ala.Civ.App. 2009).
 

 In the prior appeal, this court wrote:
 

 “In this case, the father openly acknowledged that he had not complied with that part of paragraph five that required him to increase the payment to the mother in proportion to the increase in the amount of funds he received from the trust fund. The father admitted that the funds he received from the trust fund had increased over the years since the divorce and that he had not increased the proportionate payment to the mother as required by paragraph five of the divorce judgment. The father does not contend that he was unable to pay the additional amount. Rather, he contends that the amounts paid by his family or the trust fund on his behalf exceed the amount he was required to have paid under paragraph five.
 

 “However, although it is clear that the father did not comply with the provisions of paragraph five of the divorce judgment, the record does not contain any evidence presented to the trial court regarding when the amounts paid to the father by the trust fund increased or by how much those payments had increased. Thus, there was no way for the trial court to determine, based on the evidence presented to it, when, and by how much, the payments to the mother should have been increased pursuant to the requirements of paragraph five. Given the lack of evidence in the record pertaining to the specific facts of this issue, we cannot say that the trial court exceeded its discretion in failing to find the father in contempt for his failure to comply with the terms of paragraph five of the divorce judgment.”
 

 Hood,
 
 23 So.3d at 1166. The mother has made the same argument in the present action as she did in the prior action, but, unlike in the prior action, the mother has provided evidence as to payments made to her and to the father from the father’s trust fund. Therefore, in this action, the mother has provided a basis on which the courts may determine the extent to which the father should have increased his payments to her pursuant to paragraph five of the divorce judgment.
 
 [3]
 

 It is undisputed that, at the time of the divorce, the father’s trust fund was paying him $700 monthly. The evidence the mother presented in this action demonstrates that additional funds from the trust fund were used to make the father’s monthly student-loan payment of approximately $187 for him beginning in March 2007. It also demonstrates that, by that time, funds from the trust fund were being used to pay the father’s child-support obligation to the mother of $525
 
 [4]
 
 and that it was making a monthly payment of $200 to the father. Thus, it appears that, by March 2007, the monthly benefits paid to or on behalf of the father had begun to
 
 *833
 
 exceed $700.
 
 [5]
 
 However, it is undisputed that the father did not, at any point, increase the periodic alimony he was paying to the wife as required by paragraph five based on the increase in the monthly benefits he received from his trust fund.
 

 In failing to increase the amount of alimony due the mother pursuant to paragraph five of the divorce judgment, the father “fail[ed] to perform an act required by the court for the benefit of’ the mother.
 
 Reed,
 
 28 So.3d at 8. Thus, we conclude that the trial court abused its discretion when it failed to hold the father in contempt. To that extent, the trial court’s judgment is reversed, and the cause is remanded for the trial court to enter a judgment adjudging the father to be in contempt.
 
 [6]
 

 We note however, that, to the extent the trial court did not hold the father in contempt for any periodic-alimony payments that he failed to make after he filed his petition to terminate that alimony obligation, the trial court acted appropriately. Discussing the termination of periodic alimony based on the receiving spouse’s cohabitation with someone of the opposite sex, our supreme court has written:
 

 “The Court of Civil Appeals, in its cases construing § 30-2-55, has established the rule that ‘once there is sufficient proof that the spouse is openly living or cohabitating with a member of the opposite sex, no alimony accrues or matures beyond the time that such cohabitation began.’
 
 Russell v. Russell,
 
 586 So.2d 12, 13 (Ala.Civ.App.1991). See
 
 Wood v. Wood,
 
 682 So.2d 1386 (Ala. Civ.App.1996). Therefore, the husband is not liable for any alimony after the date the wife began cohabitating with her boyfriend in 1986. The trial court thus erred in finding the husband in contempt and in ordering him to pay alimony for that period after the cohabitation began.”
 

 Ex parte Ward,
 
 782 So.2d 1285, 1288 (Ala. 2000). As previously noted, the mother began cohabiting with her boyfriend at least as early as November 2009, which is when the father stopped paying periodic alimony to her and after he had filed his petition to terminate his alimony obligation. Thus, the trial court did not err in failing to hold the father in contempt with regard to any alimony payments the mother claims for the period following November 2009.
 

 Finally, the mother contends that the trial court erred in failing to hold the father in contempt because of his failure to pay certain child support that, she says, had accrued. However, the mother failed to preserve that issue for appeal. In
 
 Kelley v. Kelley,
 
 52 So.3d 534 (Ala.Civ.App. 2010), this court wrote:
 

 “The wife next asserts that the trial court exceeded its discretion by failing to find the husband in contempt of court for his failure to pay alimony, to maintain health insurance on the wife, and to
 
 *834
 
 preserve the marital assets in accord with the pendente lite order....
 

 “We cannot address the issues regarding unpaid alimony and health insurance because the wife failed to preserve those issues for appeal. ‘[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.’
 
 New Props., L.L.C. v. Stewart,
 
 905 So.2d 797, 801-02 (Ala.2004).
 
 See also Point Clear Landing Ass’n, Inc. v. Kaylor,
 
 959 So.2d 672, 677 (Ala.Civ.App.2006) (accord); and Rule 52(b), Ala. R. Civ. P.
 

 “In this case, the trial court made no findings of fact; it simply entered a judgment divorcing the parties and dividing the marital property. Although the wife filed a postjudgment motion, the trial court’s failure to find the husband in contempt on the basis of unpaid alimony and lapsed health insurance was not asserted as error in that motion. As a result, the wife has failed to preserve those issues for appellate review.”
 

 52 So.3d at 544.
 

 In the present case, the trial court did not make any findings of fact relative to the issue of child support. Thus, to preserve for appeal the issue whether the evidence demonstrated that the trial court was required to hold the father in contempt for failure to pay all the child support required by the trial court’s prior judgments, the mother was required to have filed a postjudgment motion specifically raising that issue.
 
 Kelley,
 
 supra. Although the mother did file a post-judgment motion, she did not raise that issue, focusing instead on the trial court’s improper change of custody of the parties’ daughter and paragraph five of the divorce judgment. As a result, this court cannot consider the mother’s contention related to the issue of child support.
 

 Based on the foregoing, we reverse the trial court’s judgment to the extent that it failed to find the father in contempt for failing to pay, before November 2009, the additional alimony due the mother as a result of the increase in the monthly benefits he was paid from his trust fund. We affirm the balance of the trial court’s judgment. We remand the cause for the trial court to consider the evidence presented and to enter a judgment consistent with this opinion. Both parties’ requests for an attorney’s fee on appeal are denied.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [2]
 

 "
 
 [2]
 
 Specifically, paragraph five of the divorce judgment states:
 

 " 'The parties agree that the [father] shall pay to the [mother] the sum of $296 per month from the income of the trust which is identified as "The Helen Trane Hood Trust for the Benefit of Benjamin Scott Hood," with said monthly payment to increase by the same percentage as the increase in the monthly benefits increase which are paid to the [father] from said Trust.' "
 

 [1]
 

 . The mother also submitted two compact discs that, according to her, contain electronic copies of the documents her attorney had obtained from the company handling the father’s trust fund. However, except for an electronic version of the record of appeal in the prior appeal and certain other files related to an entirely different case, the files on those discs are protected by passwords, and there is no indication that the mother provided the trial court with those passwords necessary to access the files on those discs. Although the discs are part of the record on appeal, this court was not provided with the passwords necessary to access the information on them related to the father's trust fund, and, as a result, this court has been unable to consider any such information contained on those discs.
 

 [2]
 

 . Although the mother does not use the phrase "alimony in gross” in her principal appellate brief, it is clear from her reply brief that she is contending that the award in paragraph five constitutes alimony in gross, which is a form of property settlement.
 
 See Lambert v. Lambert,
 
 22 So.3d 480, 485 (Ala.Civ.App. 2008) (" '[A]limony in gross is a form of property settlement.’ ” (quoting
 
 TenEyck v. Ten-Eyck,
 
 885 So.2d 146, 152 (Ala.Civ.App. 2003))).
 

 [3]
 

 . We note that the father has not asserted the doctrine of res judicata as a bar to the mother's contempt action against him, despite the fact that her action raises the same issues as her prior contempt petition that was litigated to a final judgment.
 
 '‘Res judicata
 
 is an affirmative defense and if it is not raised in the trial court, it is deemed to have been waived.”
 
 Imperial Crown Marketing Corp. v. Wright,
 
 560 So.2d 1025, 1027 (Ala. 1989).
 

 [4]
 

 . This payment appears to represent an amount of child support that the father had voluntarily increased from what had been ordered in the divorce judgment.
 

 [5]
 

 . In his appellate brief, the father argues that the monthly benefits he received from the trust fund never exceeded $700, relying on testimony from the mother in which she agreed with the father’s attorney on cross-examination that the father had not been paid more than $700 per month by the trust. However, when the whole context of the mother’s testimony is considered, it is clear that, in agreeing with the father’s attorney, she was not considering the items, such as the father’s child-support obligation, that the trust fund had begun to pay on the father’s behalf.
 

 [6]
 

 . Although we conclude that the trial court erred in failing to hold the father in contempt, we will leave it to the trial court to determine, based on the evidence presented, the period during which the father was in violation of the divorce judgment and the amount owed the mother as a result of that violation.