Manchester Family Division
No. 2010-842

IN THE MATTER OF KAREN SCHAULIN-VIVIERS AND NORRIS VIVIERS

Argued: October 19, 2011
Opinion Issued: February 10, 2012

*Tober Law Offices, P.A.*, of Portsmouth (*Stephen L. Tober* and *Katharine J. Crawford* on the brief, and *Ms. Crawford* orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the respondent.

CONBOY, J. The respondent, Norris Viviers, appeals an order recommended by a Marital Master (*Geiger*, M.) and approved by the Manchester Family Division (*Emery*, J.), ruling that his obligation to pay alimony to the petitioner, Karen Schaulin-Viviers, could not be modified because the parties agreed to a lump-sum payment of alimony. We vacate and remand.

The following facts are drawn from the record. The parties married in April 2003 and divorced in October 2007. The divorce decree, based on the parties' permanent stipulation, required the respondent to pay alimony to the petitioner "in an amount equal to $400,000.00 less the net proceeds" paid to the petitioner from the sale of a certain parcel of Florida real estate. The stipulation provided that the respondent would pay the alimony "at the rate of $55,000.00 per year on October 1st of each year beginning October 1, 2008 until paid in full." It further provided that the alimony was "includable as income to the Petitioner . . . and deductible by Respondent" pursuant to pertinent provisions of the federal Internal Revenue Code. The stipulation also required the respondent's alimony obligation to be secured by a third mortgage on his real estate located in Moultonborough.

In October 2008, the parties entered into an agreement that modified the respondent's alimony obligation by allowing him to pay the petitioner the first $55,000 payment in installments with $27,500 to be paid by October 3, 2008, and the remaining $27,500 to be paid in $5,000 increments monthly beginning on November 1, 2008.

In February 2009, the respondent moved to terminate his alimony obligation based upon changed financial circumstances. In his motion, he observed that his total alimony obligation was $282,000 ($400,000 less $118,000 from the proceeds of the sale of the Florida parcel). He alleged that he was a real estate developer and when the parties divorced, his "personal net worth was over 4.5 million dollars and his taxable earnings in 2007 [were] over $540,000." He alleged that because "[t]he development and

real estate market [had] suffered a dramatic down turn" since the parties divorced, his "stream of income and . . . net worth" had "evaporate[ed] . . . to approximately . . . negative 2.3 million dollars." Therefore, he sought to terminate his alimony obligation because of this "substantial unforeseen change in circumstances."

In a 2009 order, which neither party appealed, the trial court granted the respondent's motion in part, finding that "the magnitude of the downturn in the economy and the real estate market," which "was of historic proportions," warranted restructuring his alimony obligation. The trial court found that the respondent "clearly ha[d] demonstrated a substantial change in his financial circumstances to warrant some relief, at least on a temporary basis until such time as the real estate market and economy begin to improve." *See In the Matter of Canaway & Canaway*, 161 N.H. 286, 289 (2010) (party requesting alimony modification "must show that a substantial change in circumstances has arisen since the initial award, making the current alimony amount either improper or unfair" (quotation and brackets omitted)); *see also* RSA 458:14 (2004) (except under circumstances not at issue here, court "may revise and modify any order made by it"). Accordingly, the trial court reduced the amount of the respondent's monthly alimony obligation to $2,500 per month, although the court did not modify the total amount the respondent owed the petitioner in alimony, which as of August 2009 was $212,000.

In April 2010, the respondent moved to suspend the temporary alimony obligation imposed by the court's 2009 order. He alleged that since the trial court's 2009 order, his financial circumstances had further deteriorated such that he now had "no funds with which to pay alimony." In response, the petitioner moved for contempt, arguing that the respondent was in contempt for failing to pay any alimony in April, May and June 2010 as well as June, July, August and September 2009, and for paying only $1,000 per month for April and May 2009.

Following a hearing, the trial court ruled that the respondent's alimony obligation was not modifiable because the parties had agreed to lump-sum alimony, payable over a period of time. *See* RSA 458:19, IV(a) (2004) (court "may make orders for alimony in a lump sum, periodic payments, or both"). The trial court ruled, however, that the terms under which this obligation could be satisfied were modifiable. Based upon its review of the respondent's financial information, the trial court reduced his alimony obligation to $1,000 per month. However, it found the respondent in contempt and awarded the petitioner her reasonable attorney's fees pursuant to RSA 458:51 (2004). The court ruled that it would not decide the amount of fees

to be paid to the petitioner until the period for appealing its order had elapsed or, in the event of an appeal, until the appeal had concluded. This appeal followed.

■ We first address the petitioner's request that we dismiss the respondent's appeal because he was found to be in contempt and does not challenge the trial court's contempt finding on appeal. We have held:

> [I]n limited circumstances, an appeal in a civil case may be dismissed if the appellant has failed to comply with an order of the trial court that relates directly to the issues raised by the appellant on appeal, and the issue of contempt is not being appealed. When a party has consciously and deliberately disregarded a trial court order that has direct bearing upon an issue for which that party seeks relief, we may exercise our discretion to dismiss.

*DeMauro v. DeMauro*, 147 N.H. 478, 482 (2002). We have applied this rule only once — in *DeMauro*. Because we find the circumstances of the instant appeal to be dissimilar to those in *DeMauro*, we decline to exercise our discretion to dismiss the respondent's appeal.

In *DeMauro*, "the defendant refused to comply with various trial court orders, including one to execute consent forms for the purpose of ascertaining his financial status." *Id.* at 483. "Further, the defendant, while in contempt, did not attend the final divorce hearings." *Id.* In addition, although ordered to do so, he failed to provide any temporary support to the plaintiff. *Id.* at 480, 481. Indeed, the trial court issued warrants for his arrest, finding that "the defendant had indicated to the plaintiff that unless she acceded to his offers for the payment of alimony and division of marital property, she would never receive anything from him and that he would continue, with the aid of his vast financial resources, to avoid service of process and arrest," a threat, the trial court found, "which [had] proven to be all too accurate." *Id.* at 480 (quotations and brackets omitted). We ruled that the defendant's actions reflected an overall "pattern of conduct intended to thwart an equitable distribution of the marital estate to the detriment of the plaintiff," and exercised our discretion to dismiss his appeal. *Id.* at 483. We observed, as well, that in his appeal, the defendant challenged "precisely the outcome that he could have prevented, for it [was] his contempt for failing to execute authorizations that is potentially dispositive of the issue about which he complain[ed]" on appeal. *Id.*

■ While at oral argument in this case, the petitioner represented that the respondent had paid no alimony since the trial court found him in contempt, the record on appeal contains no evidence of this. Nor does the

record indicate whether, since the trial court issued its contempt finding, the respondent has purged himself of the contempt. Accordingly, we decline the petitioner's request to dismiss the respondent's appeal on this basis.

We next address the respondent's assertion that the trial court erred as a matter of law when it ruled that his alimony obligation could not be modified because the parties agreed to a lump-sum, payable over time. The trial court reached this conclusion by relying upon cases from other jurisdictions, which distinguish between lump-sum alimony, also called "alimony in gross," and periodic alimony. *See Hager v. Hager*, 299 So. 2d 743, 750 (Ala. 1974).

Generally, periodic alimony refers to monthly alimony awarded on the basis of need that has no fixed termination date, but, instead, terminates upon death or the obligee's remarriage. *See West v. West*, 891 So. 2d 203, 212 (Miss. 2004). It is modifiable based upon the changes in the parties' financial conditions or needs. *See Hager*, 299 So. 2d at 750-51.

By contrast, lump-sum alimony or alimony in gross, "is a fixed and irrevocable amount," that may be payable either "in a single lump sum or in fixed periodic installments." *West*, 891 So. 2d at 212. "A specific period of time for which payments are to run and a fixed sum of money are two characteristics of lump sum alimony." *Id.* It is not modifiable. *Id.* In some jurisdictions that recognize non-modifiable alimony in gross or lump sum alimony, such alimony is considered a form of property distribution. *See Hager*, 299 So. 2d at 749; *Rivera v. Rivera*, 661 S.E.2d 541, 542 (Ga. 2008). To determine whether alimony is periodic or alimony in gross (lump sum), courts "look to the substance, rather than the label." *West*, 891 So. 2d at 212.

We have not previously opined as to whether New Hampshire law recognizes the concept of non-modifiable alimony in gross. However, we have held that the court may modify an agreement between the parties or a divorce decree awarding a lump sum as alimony, notwithstanding the obligee's promise not to seek additional alimony. *See Norberg v. Norberg*, 135 N.H. 620 (1992); *LeBeau v. LeBeau*, 80 N.H. 139, 140-41 (1921), *superseded on other grounds by statute as stated in Lund v. Lund*, 96 N.H. 283 (1950).

We need not resolve the issue, however, because even under the law of those jurisdictions that recognize non-modifiable alimony in gross, the alimony in this case would not qualify. Here, according to the parties' permanent stipulation, the alimony payments were includable as taxable income to the petitioner and were tax deductible by the respondent. This is inconsistent with treating the alimony as "alimony in gross," but is consistent with treating it as "periodic alimony." *See Friend v. Friend*, 783

N.W.2d 122, 122 (Mich. 2010); *see also Hood v. Hood*, No. 2100358, 2011 WL 3211118, at *5 (Ala. Civ. App. July 29, 2011). "[A]limony in gross is not a taxable event to the payee," while "periodic alimony is taxable to the payee." *Friend*, 783 N.W.2d at 122. Additionally, the respondent's obligation has been modified twice, once by agreement in October 2008, and again pursuant to a 2009 court order, which neither party appealed. *See Hood*, 2011 WL 3211118, at *5.

■ At the very least, these aspects of the parties' agreement and conduct create an ambiguity as to whether the alimony awarded was alimony in gross or periodic alimony. "Unless it is clear from the record what sort of alimony award is given, we must construe the alimony as being periodic and not lump sum." *West*, 891 So. 2d at 212; *cf. Trammell v. Trammell*, 523 So. 2d 437, 439 (Ala. Civ. App. 1988) ("The intent to award alimony in gross should be unequivocally expressed or necessarily inferred from the language used." (quotation omitted)). Under these circumstances, even assuming that New Hampshire law were to recognize the concept of non-modifiable alimony in gross, the trial court erred by characterizing the alimony in this case as such. Accordingly, we vacate the trial court's determination that the respondent's alimony obligation was non-modifiable and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

DALIANIS, C.J., concurred; DUGGAN, J., retired, specially assigned under RSA 490:3, concurred.